[No. A024597. First Dist., Div. Two. Aug. 22, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY STEWART, Defendant and Appellant.

COUNSEL

Jeffrey P. Rosenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

KLINE, P. J.—In *People* v. *Fosselman* (1983) 33 Cal.3d 572 [189 Cal.Rptr. 855, 659 P.2d 1144], our Supreme Court held that a trial court may consider inadequate assistance of trial counsel as a basis for a motion for a new trial. (*Id.,* at pp. 582-583.) Because in that case the motion was presented by newly retained counsel (*id.,* at p. 578), the Supreme Court was not obliged to concern itself with the conflict that usually will arise when a defendant unable to retain a new attorney requests the one who represented him at trial to argue his own incompetence as a ground for new trial. This is the problem we address in this case.

### Statement of the Case

On May 13, 1983, appellant was charged with escape from the county jail (Pen. Code, § 4532, subd. (a)). A jury found him guilty as charged. Appellant filed a motion for new trial on the following grounds: "1) Errors in decision of questions of law; [¶] 2) Verdict was contrary to the evidence and the law, and [¶] 3) Incompetence of counsel." The motion was denied. On September 21, 1983, the trial court sentenced appellant to imprisonment in the county jail "for the term of 270 days, to run consecutive to other

sentence being served. Further, sentence to run from date of apprehension on escape charge." Timely notice of appeal was filed on October 11, 1983.

## Facts

On April 14, 1983, while appellant was an inmate in the county jail after pleading guilty to a misdemeanor, he and 12 other inmates were in the recreation area of the combined jail and courthouse building. The recreation area was on the fifth floor roof and was enclosed "like a cage" by a cyclone fence. The correctional officer in charge of the prisoners had observed that there were no holes in the fence before he allowed the prisoners into the area.

After the inmates had been outside for about one and one-half hour, the correctional officer was informed that a man was crying for help. He investigated and found a hole in the fence. A blunt nail was lying in the "no man's land between the fence and the louvers" of the roof. The officer also made a body count of the prisoners and discovered that one was missing. After other officers arrived at the scene he climbed out to a ledge on the fifth floor roof. From that vantage point the officer observed appellant lying 30 feet below on the third floor roof. A marshal was standing over appellant. An S-shaped piece of cyclone fence was found in appellant's left front pocket. The marshal, who had also responded to a call for help, discovered appellant lying on the third floor roof with his feet twisted in an unnatural angle. Appellant was complaining of pain in his ankles and feet. There were some very minor abrasions on the palms of his hands. An ambulance was called and appellant was taken to the hospital.

## Defense

Appellant testified that he suffered from a "seizure disorder" which caused him to unexpectedly fall to the ground, "jerk" and then pass out. On an earlier occasion he passed out in the living room of his house but woke up in the bedroom. Since no one else was present he guessed he "could have walked or something." At the time he was incarcerated in the county jail he was taking prescription medicine for his condition. He did not experience seizures when he took the medication regularly.

Appellant further testified that jail doctors discontinued his medication prior to the day of the charged escape. On that day he recalled being in the recreation area on the fifth floor roof. While walking around he noticed a piece of wire underneath the drinking fountain. He put the wire in his pocket, intending to "use it to keep the button pushed in on the shower so [he] didn't have to keep pushing it in." Appellant noticed the hole in the fence

but did not know who made it. He sat down by the hole to read a book, then felt himself jerk until he passed out. He next recalled lying on the fifth floor roof and "rolling away." After passing out again, he awoke to find himself falling over the edge. The next thing he remembered was hitting the third floor roof. About 15 minutes later he felt pain and called for help.

A physician in general practice testified that he had renewed appellant's prescription for antiseizure medication after appellant told him about his condition. This occurred before appellant was placed in the county jail. The doctor also testified that a person having a seizure would not normally carry out any purposeful action and that appellant should not suffer seizures while taking the prescribed medication.

### Rebuttal

A medical assistant at the jail testified that the medical records indicate appellant was given his antiseizure medication the entire time he was in jail. On cross-examination the witness conceded that the records were often inaccurate.

The jury rejected appellant's defense and convicted him of the charged escape.

### Motion for a New Trial

Following his conviction, appellant personally instructed his appointed trial counsel to file a motion for new trial on the basis of incompetence of counsel. The motion was duly filed listing as grounds: incompetence of counsel, errors in law, and that the verdict was contrary to the evidence and the law. The motion papers did not state why the attorney was incompetent or make any legal or factual arguments in support of the other grounds.[1]

At the hearing on the motion, the trial court asked appellant and his trial counsel if they would divulge why appellant thought his attorney had acted incompetently. They declined to do so and counsel argued that the trial court should immediately appoint a new attorney to discuss the matter with appellant and represent him on the motion. Trial counsel claimed he could not argue his own incompetence, and, as appellant was not trained in the law, it would be unfair to compel him to do so. It is undisputed that appellant lacked the necessary funds to retain counsel.

---

[1]The latter grounds appear to have been abandoned by appellant and the motion was therefore properly denied as to them.

After hearing from both counsel, the trial court continued the matter and requested points and authorities concerning the proper procedure to be followed. Specifically, the court posed the question whether he was required to appoint new counsel even though appellant had made no prima facie showing of incompetence.

Following submission of memoranda, the trial court held a further hearing on the motion and continued the matter for 12 days.

At the third hearing the trial court decided to conduct an *in camera* hearing with appellant and his trial counsel, from which the district attorney was excluded. At this hearing appellant finally stated that he felt he was inadequately represented because his trial counsel failed to call his personal doctor in Southern California and "two witnesses up on the fourth floor."

After returning to open court the trial court denied the motion for new trial. Ruling that appellant's defense was adequately presented, the trial judge found the motion "to be totally unsupported and frivolous." However, the trial court also stated: "The problem with the dictates of *Fosselman* which allows a motion for a new trial to be made on incompetence at the trial court level are the procedural problems which leave a trial court in a position of making some difficult threshold decisions which we've dealt with in this case such as, is the defendant required to specify the act or omission which have withdrawn a defense? If so, is the indigent defendant entitled to separate counsel to lay the bare allegations before the Court or may the trial counsel be required to prepare such allegations? Is it a conflict for trial counsel to prepare such allegations when his conduct is one of the bases for the motion? May a trial judge summarily deny such a motion as frivolous when they're not supported by adequate specifications based upon the trial Court's knowledge of the conduct of the trial?"

### Discussion

Though it may be obvious, it is for analytical purposes useful to emphasize at the outset that the question whether to appoint new counsel to present a motion for new trial is distinct from the question whether new trial is warranted. ■ Since *Fosselman*, there are two ways in which a defendant may show he has been denied his constitutional right to the effective assistance of counsel and for that reason should be granted a new trial. He may establish that he was deprived of his constitutional right, first, by showing that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates and that counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense. (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d

859, 2 A.L.R.4th 1]; *People* v. *Beaudrie* (1983) 147 Cal.App.3d 686, 692 [195 Cal.Rptr. 289].) Alternatively, where trial counsel's acts or omissions do not technically amount to withdrawal of a defense, a defendant may prove ineffectiveness "if he establishes that his counsel failed to perform with reasonable competence and that it is reasonably probable a determination more favorable to the defendant would have resulted in the absence of counsel's failings." (*People* v. *Fosselman, supra,* 33 Cal.3d at p. 584.)

A defendant who requests new counsel to assist him in demonstrating the failings of trial counsel cannot, of course, be required to first satisfy the *Pope* or *Fosselman* standard; for this would compel the defendant himself, or the counsel whose competence has been placed in issue, to successfully perform the very function for which new legal counsel is sought. Relief cannot be conditioned upon a showing that it is unnecessary. ■ On the other hand, as the Supreme Court made clear in *People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44], which involved the right to new counsel before trial is completed rather than for the purpose of making a posttrial motion, a defendant's right to a court-appointed counsel does not necessarily include the right to require the court to appoint more than one counsel. The right to the substitution of new counsel depends upon whether the defendant has made a sufficient showing " ' ' "that the right to the assistance of counsel would be substantially impaired . . . in case the request is not granted, and within these limits there is a field of discretion for the court." ' ' [Citations.]" (*People* v. *Marsden, supra,* 2 Cal.3d at p. 123.)

Where a defendant requests the substitution of new counsel after trial in order to assist in the preparation of a motion for new trial based on the inadequacy of trial counsel, we believe it imperative that, as a preliminary matter, the trial judge elicit from the defendant, in open court or, when appropriate, at an *in camera* hearing, the reasons he believes he was inadequately represented at trial. As stated in *Marsden,* a trial court cannot thoughtfully exercise its discretion in a matter such as this without listening to the defendant's reasons for requesting a change of attorneys. "A trial judge is unable to intelligently deal with a defendant's request for substitution of attorneys [or for a new trial on the basis of trial counsel's incompetence] unless he is cognizant of the grounds which prompted the request." (*Ibid.*)

Once a trial judge is informed of the facts underlying a defendant's claim of inadequate assistance, he is then in a position to intelligently determine whether he may at that point fairly rule on the defendant's motion for a new

trial, or whether new counsel should be appointed to more fully develop the claim of inadequate representation.

In those instances where the alleged incompetence relates to events occurring at trial—such as, to name just a few examples, a failure to object to evidence, weakness in legal argument, or a failure to vigorously cross-examine a witness—the trial court is uniquely equipped to determine whether the defendant's claim has merit. In such circumstances it is unnecessary to appoint new counsel to assist in the motion for new trial, since observations necessarily made by the trial court during trial provide sufficient information to intelligently rule on the motion for new trial. "It is undeniable that trial judges are particularly well suited to observe courtroom performance and to rule on the adequacy of counsel in criminal cases tried before them." (*People* v. *Fosselman, supra,* 33 Cal.3d at p. 582.) Indeed, in such circumstances the trial judge is in a far better position to evaluate the defendant's claim than would be new counsel, who, unlike the judge, was not present at trial.

If, on the other hand, the defendant's claim of inadequate representation relates to something that did not occur within "the four corners of the courtroom" (*Marsden, supra,* 2 Cal.3d at p. 123) or which cannot fairly be evaluated by what did occur at trial, then, in the sound exercise of its discretion, the court may appoint new counsel to better develop and explain the defendant's assertion of inadequate representation. Substituted counsel should be provided in instances such as this when, after the trial court has made all inquiries of the defendant and of trial counsel that in the circumstances seem pertinent, it concludes that the defendant has made a colorable claim that he was denied his constitutional right to the effective assistance of counsel. A defendant has made such a colorable claim if he credibly establishes the *possibility* that his trial counsel failed to perform with reasonable competence and that, as a result, a determination more favorable to the defendant *might* have resulted in the absence of counsel's failings. A claim of denial of the right to the effective assistance of counsel is not colorable, for example, if it is based in substantial part upon factual representations that are manifestly inconceivable, or upon the failure of trial counsel to produce exculpatory evidence that is legally inadmissible or, if not inadmissible, which would be merely cumulative of other evidence tending to exonerate the defendant that was adequately presented to the trier of fact.

■ To summarize, we conclude that in hearing a motion for new trial based on incompetence of trial counsel, the trial court must initially elicit

and fully consider the defendant's reasons for believing he was ineffectively assisted at trial. In so doing, the court must make such inquiries of the defendant and trial counsel as in the circumstances appear pertinent. If the claim is based upon acts or omissions that occurred at trial or the effect of which may be evaluated by what occurred at trial the court may rule on the motion for new trial without substituting new counsel. If, on the other hand, the claim of incompetence relates to acts or omissions that did not occur at trial and cannot fairly be evaluated by what occurred at trial, then, unless for other good and sufficient reason the court thereupon grants a new trial, the court must determine whether to substitute new counsel to develop the claim of incompetence. New counsel must be appointed when the defendant presents a colorable claim that he was ineffectively represented at trial; that is, if he credibly establishes to the satisfaction of the court the possibility that trial counsel failed to perform with reasonable diligence and that, as a result, a determination more favorable to the defendant might have resulted in the absence of counsel's failings.

We apply this standard to the facts before us.

■ In the present case, after considerable discussion concerning the appropriate procedure to employ, the trial court sought to elicit from appellant the reasons he believed his trial representation had been inadequate. The defendant told the judge he believed he was inadequately represented because "I asked my attorney to call my personal doctor in Hawthorne [who] is a specialist on seizures. And he has not contacted him. I have two witnesses up on the fourth floor, and they were not brought down . . . . I really think that if my doctor was called and witnesses were brought down and the medical grievance forms were pulled for the last twelve months, that I might have been found innocent instead of guilty."

With respect to trial counsel's failure to call appellant's personal physician, we believe the trial court ruled correctly in denying the motion for new trial. Although this claim does not relate to an event that occurred at trial, it involves an omission that can be evaluated by what occurred at trial. The only possible purpose for calling appellant's personal physician would be to establish that appellant indeed suffered from a "seizure" disorder. This fact, however, was uncontested. The critical issue at trial was whether appellant suffered the particular seizure which he claims caused him to fall from the fifth floor roof. Appellant's personal physician could not testify regarding this fact since he did not observe the seizure, nor, apparently, did he examine appellant at any material time immediately before or after the fall. Appellant did not on this score even raise a colorable claim that trial counsel failed to perform with reasonable competence, and it was therefore

unnecessary for the trial court to appoint new counsel to present the argument.

■ We are more troubled, however, by the court's treatment of appellant's claim that he had "two witnesses on the fourth floor" who should have testified. The record does not disclose what the testimony of these witnesses would have been had they been called, nor did the trial court question appellant as to their expected testimony. It has been held that failure to interview or call material witnesses may form the basis of a successful ineffective assistance attack. (See, e.g., *In re Hall* (1981) 30 Cal.3d 408, 427-428 [179 Cal.Rptr. 223, 637 P.2d 690]; *People* v. *Rodriguez* (1977) 73 Cal.App.3d 1023, 1031-1032 [141 Cal.Rptr. 118].) In addition, *People* v. *Marsden, supra,* 2 Cal.3d 118, has been interpreted as requiring a court not only to listen to a defendant's volunteered reasons for believing he has been denied effective representation, but also to make an active inquiry into those reasons. (*People* v. *Terrill* (1979) 98 Cal.App.3d 291, 298-299 [159 Cal.Rptr. 360]; *People* v. *Gibson* (1976) 56 Cal.App.3d 119, 133-134 [128 Cal.Rptr. 302]; *People* v. *Munoz* (1974) 41 Cal.App.3d 62, 66 [115 Cal.Rptr. 726].) Here, appellant simply claimed that "two witnesses on the fourth floor" should have been called to testify. The trial court did not inquire into the substance of the witnesses' expected testimony, but instead denied the motion without endeavoring to learn whether the testimony might have been material or even crucial and without appointing new counsel to assist the court in this regard. We believe this constituted error. ■ "A trial judge is unable to intelligently deal with a defendant's request for [a new trial on the basis of trial counsel's incompetence or for] substitution of attorneys unless he is cognizant of the grounds which prompted the request." (*People* v. *Marsden, supra,* 2 Cal.3d at p. 123.) A denial of appellant's motion for new trial based on ineffective representation without careful inquiry into the defendant's reasons for claiming incompetence " 'is lacking in all the attributes of a judicial determination.' [Citations.]" (*People* v. *Munoz, supra,* 41 Cal.App.3d at p. 66.)

*Disposition*

Although the decision we reach here requires reversal of the judgment, it does not require an automatic retrial. Instead, we remand to the trial court to allow that court to more fully inquire into the basis for appellant's motion for new trial. If, after further inquiry, the court determines that appellant has presented a colorable claim of ineffective assistance, then the court must grant the motion for new trial or appoint new counsel to fully investigate and present the motion. If, on the other hand, further inquiry does not disclose a colorable claim, the motion for new trial may be denied and the judgment reinstated.

Reversed and remanded.

Rouse, J., and Smith, J., concurred.