[No. F051804. Fifth Dist. Feb. 5, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
ISMAEL MEJÍA, Defendant and Appellant.

COUNSEL

Robert Navarro, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and Lloyd G. Carter, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GOMES, Acting P. J.**—After gang taunts between Norteños and Sureños at a swap meet in Visalia, witnesses observed brothers Ismael and Sergio Mejía flashing hand signs, yelling "Reyes" (the Spanish name of a subset of the Sureño gang), and firing guns right before one bullet just missed Isaac Tobías (a Norteño) and another bullet struck Noel Chávez (a friend of Tobías's but not a gang member) on February 12, 2006.[1]

A jury found Ismael guilty of (1) attempted willful, deliberate, and premeditated murder of Chávez for the benefit of a criminal street gang with personal and intentional discharge of a firearm by a principal causing great bodily injury, (2) assault with a firearm on Chávez for the benefit of a criminal street gang, and (3) possession of a controlled substance (methamphetamine). (Pen. Code, §§ 186.22, subd. (b), 187, subd. (a), 189, 245, subd. (a)(2), 664, subd. (a), 12022.53, subds. (d), (e)(1);[2] Health & Saf. Code, § 11377, subd. (a).)

At Ismael's probation and sentencing hearing, the trial court (1) imposed a life with possibility of parole term for the attempted willful, deliberate, and premeditated murder of Chávez plus a consecutive 25-year-to-life term on the firearm enhancement, (2) imposed and stayed an eight-year term (the three-year midterm plus a consecutive five-year term on the criminal street gang enhancement) for the assault with a firearm on Chávez, and (3) imposed concurrently the two-year midterm for the possession of a controlled substance.[3]

---

[1] Solely in the interests of brevity and clarity, later references to brothers Ismael and Sergio Mejía will be by first names only.

[2] All statutory references are to the Penal Code except where otherwise noted.

[3] At the probation and sentencing hearing, the court stated Ismael's term on the attempted murder as "seven years to life." The minute order shows the term as "7 years to life with the possibility of parole" and the abstract of judgment shows the term as both "life with the possibility of parole" and "7 years to life." On appeal, Ismael argues, and the Attorney General

On appeal, Ismael argues numerous issues, only one of which we will address. With reference to the trial court's failure to hold a *Marsden* hearing at the probation and sentencing hearing, we will reverse the judgment and remand the matter with directions to the trial court to hold a *Marsden* hearing and to conduct further proceedings as authorized by law. In deference to the doctrine of ripeness, we will address none of his other issues.

## DISCUSSION

### 1.  *Failure to Hold* Marsden *Hearing*

Ismael argues that the trial court's failure to hold a *Marsden* hearing at the time of the probation and sentencing hearing requires reversal. The Attorney General argues that no request for a *Marsden* hearing was made. Both arguments arise from the following colloquy among court and counsel at the probation and sentencing hearing:

"[ISMAEL'S COUNSEL]: After consulting with my client, Ismael Mejía, and we've gone over everything from the trial to the sentencing report, I believe Mr. Mejía would like to make a motion for a new trial based in large part on my conduct at the trial. And I can't do that for him.

"THE COURT: Well, okay. [¶] [Sergio's counsel]?

"[SERGIO'S COUNSEL]: My client has the same desire.

"THE COURT: I have a concern when we do jury trials and there may be some issues in trials, but I don't know that we do jury trials and then pick another couple of lawyers to review conduct of the attorneys during the trial to see if there's anything to pick apart. [¶] Can you give me hints what that can be about?

"[ISMAEL'S COUNSEL]: I think I cannot do that.

"[PROSECUTOR]: The People's position is we are now post-trial and the appropriate remedy to handle this is through the appellate process. That's why we have it.

"THE COURT: Without anything further—and I don't know if I should or may do this in camera. I probably need to have some sort of colorable basis.

---

agrees, that section 664, subdivision (a) requires amendment of the abstract of judgment to show the term as "life with the possibility of parole" but not as "7 years to life." In deference to the doctrine of ripeness, we will address no issue besides the one that *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] (*Marsden*) poses. (See *post,* pts. 1. & 2.)

"[ISMAEL'S COUNSEL]: Maybe we can do that in camera hearing.

"[SERGIO'S COUNSEL]: Yes.

"THE COURT: I'll do an in camera hearing if there's no objection. Otherwise, I need to have—

"[ISMAEL'S COUNSEL]: I can give a basis I think out here. [¶] My client feels that my approach at not going specifically to elements of the offenses, that he purposely chose to aid and abet, that type of thing, was a mistake. And that the approach of ignoring that, not making an 1118 motion on those multiple counts, was a mistake. That I should not have argued, I guess, in the whole that he was innocent, because he didn't do anything. And he felt that was in error on my part.

"THE COURT: [Sergio's counsel], can you shed any light to your request?

"[SERGIO'S COUNSEL]: Your Honor, Sergio feels that I had a trial, an attempted murder trial a week before I did his trial, and that compromised my ability to represent him in his trial.

"[PROSECUTOR]: Your Honor, if I may just briefly? [¶] As far as in regards to [Ismael's counsel], his approach, you know, he didn't just argue that his client didn't do anything. His client took the stand. His client made his own defense. His client claimed it was self-defense, as far as the shooting through the pocket. The jury completely disregarded every word that came out of his mouth and convicted him even for that part of the offense. [Ismael's counsel] was very zealous in attacking witnesses, as was [Sergio's counsel]. They kind of took the good cop, bad cop approach. Kind of split things and tried to get things out in a nice way. And when that didn't work, they switched to the bad cop approach. [¶] In counsel's opinion, they did everything they could. Both counsel did motions that we dealt with during trial. The People's position is there isn't a colorable basis. It is the appellate court that needs to be dealt with. An appeals attorney needs to go through the entire record and deal with things of that nature.

"THE COURT: My concern is I don't know whether there's an obligation or whether even a good idea for a court on any case to say okay, you got a conviction. Let's appoint a lawyer to go over the record to see that there's [sic] any grounds for a new trial. And I have not heard any good motion or colorable reason for a new trial at this time. The case was tried. The evidence came out. Appropriate motions were made. The attorneys argued it appropriately and the jury came to a decision. So the motion for a[n] appointment of conflict attorney to go through the record to see if there's any colorable claim for a new trial is denied."

On that record, the Attorney General argues that "no *Marsden* hearing was ever requested for either brother nor is there anything in the record to suggest the trial court should have divined such an intent." He is mistaken. Indisputably, the record shows that Ismael instructed his counsel to move for a new trial largely on the basis of his counsel's performance at trial and that his counsel so informed the trial court. Analogously, in *People v. Stewart* (1985) 171 Cal.App.3d 388 [217 Cal.Rptr. 306] (*Stewart*), disapproved on another ground in *People v. Smith* (1993) 6 Cal.4th 684, 696 [25 Cal.Rptr.2d 122, 863 P.2d 192], as stated in *People v. Bolin* (1998) 18 Cal.4th 297, 346, fn. 16 [75 Cal.Rptr.2d 412, 956 P.2d 374], the defendant "personally instructed his appointed trial counsel to file a motion for new trial on the basis of incompetence of counsel." (*Stewart, supra,* at p. 393.) That was adequate to put the trial court on notice of the defendant's request for a *Marsden* hearing. (*Stewart, supra,* at pp. 396–397.)

■ Congruently, Ismael's counsel's representation to the trial court about Ismael's request "to make a motion for a new trial based in large part on [his counsel's] conduct at the trial" was adequate to put the trial court here on notice of Ismael's request for a *Marsden* hearing. Our Supreme Court emphasizes: "The semantics employed by a lay person in asserting a constitutional right should not be given undue weight in determining the protection to be accorded that right." (*Marsden, supra,* 2 Cal.3d at p. 124.)

Nonetheless, the Attorney General seeks shelter in a single Court of Appeal case stating that a "*Marsden* request should be clear and unequivocal." (See *People v. Rivers* (1993) 20 Cal.App.4th 1040 [25 Cal.Rptr.2d 602] (*Rivers*).) Trial counsel in *Rivers* "first restated defendant's complaints as 'like a *Marsden* hearing,' but then 'clarified' that defendant 'wants to take over pro per from this point on.' " (*Rivers, supra,* at p. 1051, fn. 7.) Where the defendant did "not claim on appeal that he really wanted new counsel," *Rivers* accepted his position "that he wanted to represent himself" and added that requests under *Marsden* and *Faretta*[4] "must be clear and unequivocal" since "the one does not imply the other." (*Rivers, supra,* at p. 1051, fn. 7.) Trial counsel in *Rivers* was ambiguous. Trial counsel here was not. *Rivers* is inapposite.

■ Since the defendant in *Stewart,* like Ismael here, "personally instructed his appointed trial counsel to file a motion for new trial on the basis of incompetence of counsel," the trial court in *Stewart,* like the trial court here, had an "imperative" duty to elicit from "defendant, in open court or, when appropriate, at an *in camera* hearing, the reasons he believes he was inadequately represented at trial." (*Stewart, supra,* 171 Cal.App.3d at pp. 393, 395.) The trial court here elicited comment only from counsel, not from

---

[4] *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525].

Ismael. That was a fatal flaw: "A trial judge is unable to intelligently deal with a defendant's request for substitution of attorneys unless he is cognizant of the grounds which prompted the request. The defendant may have knowledge of conduct and events relevant to the diligence and competence of his attorney which are not apparent to the trial judge from observations within the four corners of the courtroom. Indeed, '[w]hen inadequate representation is alleged, the critical factual inquiry ordinarily relates to matters outside the trial record: whether the defendant had a defense which was not presented; whether trial counsel consulted sufficiently with the accused, and adequately investigated the facts and the law; whether the omissions charged to trial counsel resulted from inadequate preparation rather than from unwise choice of trial tactics and strategy.' " (*Marsden, supra*, 2 Cal.3d at pp. 123–124.)

The final question is "whether the error in the trial court was prejudicial to defendant. There can be no doubt it was. On this record we cannot ascertain that defendant had a meritorious claim, but that is not the test. Because the defendant might have catalogued acts and events beyond the observations of the trial judge to establish the incompetence of his counsel, the trial judge's denial of the motion without giving defendant an opportunity to do so denied him a fair trial. We cannot conclude beyond a reasonable doubt that this denial of the effective assistance of counsel did not contribute to the defendant's conviction." (*Marsden, supra*, 2 Cal.3d at p. 126, citing *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].) The trial court's failure to hold a *Marsden* hearing entitles Ismael to relief.

### 2. *Doctrine of Ripeness*

In deference to the common law doctrine of ripeness, we address none of Ismael's other issues since the facts in an action that is not founded on an actual controversy are not yet sufficiently congealed to permit an intelligent and useful decision to be made. (*Alameda County Land Use Assn. v. City of Hayward* (1995) 38 Cal.App.4th 1716, 1722 [45 Cal.Rptr.2d 752]; *California Water & Telephone Co. v. County of Los Angeles* (1967) 253 Cal.App.2d 16, 22 [61 Cal.Rptr. 618]; see *People v. Superior Court (Marks)* (1991) 1 Cal.4th 56, 65, fn. 6 [2 Cal.Rptr.2d 389, 820 P.2d 613].) Whether the other issues Ismael argues will arise after remand is speculative. The parties shall have the right on appeal from any ensuing judgment to incorporate by reference the briefing now on file for later adjudication of those issues together with new issues, if any, arising from proceedings after remand. (See Cal. Rules of Court, rule 1.5(a) ["The rules and standards of the California Rules of Court must be liberally construed to ensure the just and speedy determination of the proceedings that they govern."].)

## DISPOSITION

The judgment is reversed and the matter is remanded with directions to the trial court to hold a *Marsden* hearing, hear Ismael's reasons for his dissatisfaction with his counsel, and on that basis exercise judicial discretion to appoint new counsel to represent him on a motion for new trial, to reinstate the judgment, or to proceed otherwise as authorized by law.

Dawson, J., and Hill, J., concurred.