[No. F052340. Fifth Dist. Apr. 11, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT MENDEZ et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts 2., 3. and 4. of the Discussion.

## COUNSEL

Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant Robert Mendez.

Richard Power, under appointment by the Court of Appeal, for Defendant and Appellant Anthony Perez.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine G. Tennant, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

GOMES, J.—A jury found appellants Robert Mendez and Anthony Perez guilty of battery with infliction of serious bodily injury on a fellow inmate at the California Substance Abuse Treatment Facility in Corcoran. (Pen. Code, § 243, subd. (d).)[1] The trial court found true the allegations that Mendez had five strike priors and that Perez had two, declined to strike any of them, and sentenced each to a 25-year-to-life term in state prison.

On appeal, Mendez argues that the trial court's failure to hold a hearing on the grievance in his new trial motion about the competence of his trial attorney requires a remand for a *Marsden*[2] hearing. Solely as to Mendez, we will reverse the judgment and remand the matter with directions to the trial court to hold a *Marsden* hearing and, on that foundation, to appoint new counsel on his new trial motion, to reinstate the judgment or to proceed otherwise as authorized by law.[3]

On appeal, Perez argues that his assault with a deadly weapon strike prior is invalid, that the trial court committed an abuse of discretion by declining to

---

[1] Later statutory references are to the Penal Code except where otherwise noted.

[2] *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] (*Marsden*).

[3] In deference to the common law doctrine of ripeness, we will not address Mendez's other issue (whether the trial court committed an abuse of discretion by not striking four of his five serious felony priors at his probation and sentencing hearing). (*Alameda County Land Use Assn. v. City of Hayward* (1995) 38 Cal.App.4th 1716, 1722 [45 Cal.Rptr.2d 752]; *California Water & Telephone Co. v. County of Los Angeles* (1967) 253 Cal.App.2d 16, 22 [61 Cal.Rptr. 618]; see *People v. Superior Court (Marks)* (1991) 1 Cal.4th 56, 65, fn. 6 [2 Cal.Rptr.2d 389, 820 P.2d 613].) If that issue were to ripen after remand, the parties shall have the right on appeal from the ensuing judgment to incorporate by reference the briefing now on file on that issue and to seek concurrent adjudication of new issues, if any, that might arise from proceedings after remand. (See Cal. Rules of Court, rule 1.5(a) ["The rules and standards of the California Rules of Court must be liberally construed to ensure the just and speedy determination of the proceedings that they govern."].)

strike his assault with a deadly weapon strike prior, and that he is entitled to additional presentence credits over and above those the trial court awarded. Solely as to Perez, we will remand the matter with directions to the trial court to award him 844 actual custody days plus 422 conduct credit days for a total of 1,266 presentence credit days, but otherwise we will affirm the judgment.

## FACTUAL BACKGROUND

On March 27, 2003, Correctional Sergeant Mathew Juarez let cellmates Mendez and Perez out of their cell to make phone calls and, minutes later, let inmate Reuben Herrera out of his cell to attend a Board of Prison Terms hearing. Mendez and Perez ran toward Herrera, Perez punched Herrera in the face, and Herrera's knees buckled. Juarez activated his alarm, gave all inmates orders to get down, and positioned himself to utilize force. Mendez and Perez both repeatedly punched Herrera in the face with closed fists. Juarez twice ordered Mendez and Perez to stop fighting. Neither obeyed him.

Juarez fired a 40-millimeter "less lethal" projectile at Perez's lower extremities. Mendez and Perez each took about 10 steps backward, lay down on their stomachs with their arms out, and made barking noises. Herrera slid down the wall, lay motionless on his back, and died. He suffered blunt force trauma behind the left ear causing a skull fracture and a brain injury and blunt force trauma to the left eye likewise causing a skull fracture and a brain injury. Each injury was capable of causing death. The more severe injury, the fracture behind the left ear, could have been caused by the projectile from Juarez's weapon, but the less severe injury, the trauma to the left eye, could not. Herrera suffered multiple non-life-threatening head injuries consistent with the infliction of multiple blows to the head.

## DISCUSSION

### 1. *Mendez: Failure to Hold* Marsden *Hearing*

Mendez argues that the trial court's failure to hold a hearing on the grievance in his new trial motion about the competence of his trial attorney requires a remand for a *Marsden* hearing. The Attorney General argues the contrary.

At the probation and sentencing hearing, Mendez's trial attorney informed the trial court that her client was making a new trial motion "based on competency of counsel." In open court, the trial court asked her, "What does he say that was incompetent?" Mendez interjected, "Well, your Honor, there was a lot. I mean, there was eight witnesses here but none of them were called on my defense. [¶] There was exculpatory evidence. There was phone

call recordings that stipulates time lines to what actually took place were never brought forth. [¶] The whole incident only occurred 11 seconds, which made it seemed like we were fighting with this individual for minutes."

At that juncture, the trial court asked, "What is it that your lawyer did or did not do that you think deprived you of a fair trial?" Mendez replied, "She didn't bring none of these into trial." The trial court replied, "Okay. [¶] Give me one witness that should have been called and tell me what that witness could have testified to that would—." Mendez answered, "Well, Mr. Herpe was the individual who was on the phone, and his transcript, he even stated to the D.A.'s office that it was a one-on-one; that their individual was never— which was me—was never involved. [¶] That is crucial to my case, your Honor. This is on paper, and there was another individual named Delgado who stated it was a one-on-one which he was never subpoenaed or questioned. And he it's on record to state it was a one-on-one, your Honor. [¶] This is—this is crucial to my defense."

The trial court asked no more questions about Mendez's reasons for challenging his trial attorney's competence but instead, obliquely referring to an earlier continuation of the probation and sentencing hearing for a different reason, asked, "And, Mr. Mendez, why didn't you mention this the last time that you were here for a sentencing?" He replied, "Because there was some conflict about the time about whether we can get this amount of time, and she asked me, she said that they were going to postpone it so figured, well, I'll just wait until it's time to—." The trial court asked, "You figured you'd have the [witnesses] come back a second time to be frustrated?" Mendez answered, "No. I didn't ask to postpone the sentencing. It was—it was done by—." The trial court replied, "All right. I'll appoint [new counsel] to represent Mr. Mendez for the sole purpose of investigating as to whether or not there appears to be a basis for a motion for new trial based on incompetency of counsel. . . ."

Tasked by the trial court "to examine issues involving a possible ineffective assistance of counsel claim," Mendez's new counsel later reported his opinion after a "review of the file" that "those issues" were not "appropriate at this time for a motion . . . on that basis." He told the trial court that he had informed Mendez "there may be possible issues on appeal that could be raised" but that he was "not in a position to make that judgment." Those issues, he opined, "would be more properly addressed if and when an appeal is filed in this matter," to which the trial court replied, "All right, and of course most ineffective assistance of counsel matters are raised by habeas." The trial court terminated new counsel's appointment and again assigned the case to Mendez's original trial attorney.

 The Attorney General acknowledges that Mendez made a new trial motion "based on competency of counsel" but emphasizes that he never

indicated "he wanted another attorney" and on that basis argues that the trial court had no duty "to conduct a *Marsden* hearing to investigate [his] complaints regarding his attorney's performance." He is mistaken. In *People v. Stewart* (1985) 171 Cal.App.3d 388 [217 Cal.Rptr. 306] (*Stewart*), disapproved on another ground in *People v. Smith* (1993) 6 Cal.4th 684, 696 [25 Cal.Rptr.2d 122, 863 P.2d 192], as stated in *People v. Bolin* (1998) 18 Cal.4th 297, 346, footnote 16 [75 Cal.Rptr.2d 412, 956 P.2d 374], the defendant "personally instructed his appointed trial counsel to file a motion for new trial on the basis of incompetence of counsel." (*Stewart, supra*, at p. 393.) That was adequate to put the trial court on notice of the defendant's request for a *Marsden* hearing. (*Stewart, supra*, at pp. 396–397.) Here, Mendez informed his trial attorney that he was making a new trial motion "based on competency of counsel." That, too, was adequate to put the trial court on notice of his request for a *Marsden* hearing. As our Supreme Court emphasizes, the "semantics employed by a lay person in asserting a constitutional right should not be given undue weight in determining the protection to be accorded that right." (*Marsden, supra*, 2 Cal.3d at p. 124.)

██ *Marsden* imposes four requirements that the trial court here ignored. First, if "defendant complains about the adequacy of appointed counsel," the trial court has the duty to "permit [him or her] to articulate his [or her] causes of dissatisfaction and, if any of them *suggest* ineffective assistance, to *conduct an inquiry* sufficient to ascertain whether counsel is in fact rendering effective assistance." (*People v. Eastman* (2007) 146 Cal.App.4th 688, 695 [52 Cal.Rptr.3d 922] (*Eastman*), italics added; cf. *People v. Mejia* (2008) 159 Cal.App.4th 1081, 1086–1087 [72 Cal.Rptr.3d 76] (*Mejia*).) In open court, Mendez identified by name two prospective witnesses who stated there was only one assailant, not two. He informed the trial court that one prospective witness told the district attorney he (Mendez) was not involved in the attack, but his trial attorney failed to call that person as a witness, and that the other prospective witness likewise characterized the assault as a "one-on-one," but his trial attorney "never subpoenaed or questioned" that person, either.

Although Mendez's grievance "about the adequacy of appointed counsel" suggested ineffective assistance within the scope of *Marsden*, the trial court failed to conduct an inquiry but instead appointed new counsel to determine whether there was "a basis for a motion for new trial based on incompetency of counsel." (See *Eastman, supra*, 146 Cal.App.4th at p. 695.) However, the trial court "cannot abandon its own constitutional and statutory obligations to make the ultimate determination." (*Id.* at p. 697, citing, e.g., Cal. Const., art. VI, § 1 [judicial power of state is vested in courts]; Code Civ. Proc., § 170 [judge has duty to decide proceeding]; *People v. Superior Court (Laff)* (2001) 25 Cal.4th 703, 721 [107 Cal.Rptr.2d 323, 23 P.3d 563] [findings and recommendations of constitutionally limited nonjudicial officers must be independently reviewed by the court]; *Hosford v. Henry* (1951) 107

Cal.App.2d 765, 772 [238 P.2d 91] [court cannot delegate own factfinding powers].) Here, the trial court simply listened to new counsel's "opinion" that there were no "issues involving a possible ineffective assistance of counsel claim" and, with no inquiry at all, assigned Mendez's defense "back to his trial counsel."

Second, if a "defendant states facts sufficient to raise a question about counsel's effectiveness . . . ," the trial court has a duty to *"question counsel as necessary* to ascertain their veracity." (*Eastman, supra*, 146 Cal.App.4th at p. 695, italics added.) Here, the trial court failed to question Mendez's trial attorney at all.

Third, the trial court has the duty to *"make a record* sufficient to show the nature of [a defendant]'s grievances and the court's response to them." (*Eastman, supra*, 146 Cal.App.4th at p. 696.) Here, immediately after Mendez identified the two prospective witnesses who characterized the assault as a "one-on-one," the trial court asked him why he had not brought that up at the original probation and sentencing hearing, intimated that Mendez wanted "the [witnesses] [to] come back a second time to be frustrated," and appointed new counsel. The trial court made no record at all about Mendez's additional grievances, if any, or about the trial court's response, if any, to his grievances.

Fourth, the trial court must " 'allow the defendant to express any specific complaints about the attorney and *the attorney to respond accordingly.' "* (*Eastman, supra*, 146 Cal.App.4th at p. 696, italics added.) The trial court made no record at all about Mendez's trial attorney's response, if any, to his grievances. "No part of this procedure satisfied the requirements of *Marsden." (Ibid.)*

█ The final question is whether the trial court's error was prejudicial to Mendez. "There can be no doubt it was." (*Marsden, supra*, 2 Cal.3d at p. 126.) Here, we cannot determine whether he had a meritorious claim of ineffective assistance, but that is not the test. Had the trial court complied with *Marsden*'s requirements, Mendez "might have catalogued acts and events beyond the observations of the trial judge to establish the incompetence of his counsel." (*Ibid.*; cf. *Mejia, supra*, 159 Cal.App.4th at p. 1087.) "We cannot conclude beyond a reasonable doubt that this denial of the effective assistance of counsel did not contribute to the defendant's conviction." (*Marsden, supra*, 2 Cal.3d at p. 126, citing *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].)

2.–4.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 1362.

## DISPOSITION

Solely as to Mendez, the judgment is reversed and the matter is remanded with directions to the trial court to hold a *Marsden* hearing and, on that foundation, either to appoint new counsel on his new trial motion or to reinstate the judgment or to proceed otherwise as authorized by law. (§ 1262.)

Solely as to Perez, the judgment is affirmed but the matter is remanded with directions to the trial court to award him 844 actual custody days plus 422 conduct credit days for a total of 1,266 presentence credit days and to send to every appropriate person a certified copy of an abstract of judgment so amended. Perez has no right to be present at those proceedings. (See *People v. Price* (1991) 1 Cal.4th 324, 407–408 [3 Cal.Rptr.2d 106, 821 P.2d 610].)

Vartabedian, Acting P. J., and Cornell, J., concurred.

The petition of appellant Anthony Perez for review by the Supreme Court was denied July 9, 2008, S162739.