[No. C055688. Third Dist. Feb. 11, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
DWAYNE RICHARDSON, Defendant and Appellant.

**COUNSEL**

Laura Schaefer, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette and Michael P. Farrell, Assistant Attorneys General, Julie A. Hokans and Clara M. Levers, Deputy Attorneys General, for Plaintiff and Respondent.

### OPINION

**SIMS, Acting P. J.**—A jury found defendant Dwayne Richardson guilty of one count of first degree residential burglary (Pen. Code, § 459),[1] two counts of making criminal threats (§ 422), and one count of kidnapping (§ 207, subd. (a)). The trial court sentenced defendant to five years in state prison. On appeal, defendant contends the trial court erred when it failed to conduct a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] (*Marsden*) in response to defendant's posttrial letters to the court requesting a motion for new trial. We shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant and J.P. worked together selling vacuum cleaners door to door. They began a romantic relationship, and J.P. moved into defendant's house, keeping her own apartment and renting it to D.B., a coworker.

The relationship between defendant and J.P. soon soured, and J.P. told defendant she wanted to move out. Defendant became angry when he learned J.P. was out with a friend, R., looking for a place to live. R. dropped J.P. off at her apartment. Defendant soon showed up, screaming and yelling at J.P. to come outside and give him "his fucking keys back," and threatening that if she did not go with him, she "wouldn't be with anybody else." J.P. called 911 as defendant kicked in the door, trapping D.B., who was standing behind the door with knife in hand ready to protect J.P. Defendant yelled at D.B. and hit him twice in the head. J.P. ran to her bedroom and locked the door. Defendant followed her and kicked in the bedroom door, yelling that she "was done" and if she was not going to be with him, she was not going to be with anybody. Defendant continued to curse at J.P., telling her "the reason why he left Baltimore was because he was tired of putting people in body bags." Defendant told J.P. she needed to come with him and "stop fucking with him."

J.P. left the apartment unwillingly, with defendant following closely behind her, and walked toward the company van parked outside. There were four men waiting by the van. Defendant told J.P. to get in the van. When she resisted, defendant told her to "stop fucking around" and that "he wasn't fucking around" and would "beat [J.P.] like a pole" if she did not get in the van. J.P. complied and got into the van along with the four other men. As defendant drove off, J.P. used her personal cell phone to call a friend for help.

---

[1] Undesignated statutory references are to the Penal Code unless otherwise indicated.

Defendant yelled at her to get off the phone, then stopped the van and took the phone away from her. J.P. tried unsuccessfully several times to call 911 from her work cell phone. She was finally able to connect with 911 and provide the dispatcher with bits and pieces of information.

Defendant parked the van at the office and he and the other four men got out but remained within eyesight of the van. Fearful of what would happen if she tried to escape, J.P. again called 911 and told the dispatcher defendant's name and where the van was located. While she was on the phone, one of the men returned to the van to look for a cigarette and told J.P. he was "getting a pistol for 'D' [the defendant]."

Defendant eventually returned to the van and drove off with J.P. still inside, but soon noticed he was being followed by the police. He told J.P. to stay in the van; however, as soon as police pulled the van over, J.P. jumped out. Defendant was detained.

By amended information, defendant was charged with first degree residential burglary (count one), making criminal threats (counts two & three), and kidnapping (count four). The information also alleged defendant had a prior serious felony (§ 667, subds. (a)–(i)), and that defendant personally used a deadly weapon (i.e., a knife) during commission of the kidnapping (§ 12022, subd. (b)(1)).

A jury convicted defendant of all four counts, but found the allegation that defendant was personally armed with a deadly weapon not true. The court granted the prosecution's motion to dismiss the prior conviction allegation due to insufficient evidence.

Prior to sentencing, the court received a letter dated January 10, 2007, from defendant requesting a new trial based on the following: (1) the prosecution witnesses gave conflicting testimony; (2) four other possible suspects should have been charged but were not; (3) there was insufficient evidence that the knife was in defendant's possession; (4) defense counsel and the defense investigator persuaded defendant not to testify in his own behalf, and defense counsel "promised [defendant] that the worse case scenario would be a conviction for 'Destruction of Property,' and instructed [defendant] to lie to the Court when asked if [defendant's] decision not to testify was [his] own"; and (5) defense counsel failed to call four defense witnesses to testify and did not "raise a protest upon the reading of the verdict he knows was wrong."[2]

Attached to the January 10, 2007, letter was a letter dated January 8, 2007, from defendant to his trial counsel, Scott Wippert, stating defendant was

---

[2] A typewritten version of the January 10, 2007, letter is attached hereto as appendix A.

"anxious to file a motion requesting a new trial" based on a lack of evidence to support the verdict, failure to put defense witnesses on the stand, and the fact that defendant did not testify in his own behalf which, defendant stated, was the result of defense counsel having "argued [defendant] out of doing and having [defendant] lie to the court about that."[3]

At a hearing on January 26, 2007, the court acknowledged receipt of both letters and confirmed defendant's desire that the court "consider a motion for a new trial." Without relieving Wippert, the court appointed Attorney Joseph de Illy to review the issues raised by defendant's letter and determine whether a motion for new trial should be brought.

De Illy sent a letter dated February 27, 2007, confirming that the scope of his investigation was to be "limited to two allegations made by [defendant] in his letter of January 10, 2007," the first being "that his attorney and the attorney's investigator went through considerable effort to persuade [defendant] not to testify," and the second being "the failure of [defendant's] attorney to call various witnesses to testify for the defense." Noting the fact that a reporter's transcript had not been prepared, de Illy informed the court that, having done the "necessary investigation and legal research," he concluded there was no legal basis for a motion for new trial.

Defendant sent a second letter to the court, dated February 27, 2007, objecting to the limited scope of Attorney de Illy's investigation and the fact that de Illy had only been allowed to review "basic discovery reports," and requesting that de Illy be given "full access" to all trial transcripts so that he "can see how my trial attorney's actions throughout the process were consistently not in my best interests."[4] Defendant's letter also complained of inadequate cross-examination of prosecution witnesses, failure to impeach prosecution witnesses, and failure to call witnesses to testify, and alleged Wippert was "still lying" to defendant.

Defendant sent the court a third letter, dated March 5, 2007, expressing concern over de Illy's findings, and asking the court to either grant a new trial or exercise leniency in sentencing.[5]

At the March 16, 2007, hearing, the court acknowledged receipt of all of defendant's letters and reiterated de Illy's finding that there was no basis for a motion for new trial. Defendant addressed the court, stating he did not testify because he "never expected it to go this far," and telling the court, "It seemed

---

[3] A typewritten version of the January 8, 2007, letter is attached hereto as appendix B.

[4] A typewritten version of the February 27, 2007, letter is attached hereto as appendix C.

[5] A typewritten version of the March 5, 2007, letter is attached hereto as appendix D.

like I was guilty but I didn't take the stand because my attorney told me it would be in my best interest not to take the stand because it was a close and shut [*sic*] situation."

The court sentenced defendant to an aggregate term of five years in state prison, minus presentence custody credit, and imposed specified fees and fines.

Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant claims his January 10, 2007, letter, together with the attached January 8, 2007, letter to his trial counsel, were sufficient to trigger the court's duty to conduct a *Marsden* hearing, and the court's failure to do so was not harmless error. Respondent argues that, under *People v. Dickey* (2005) 35 Cal.4th 884 [28 Cal.Rptr.3d 647, 111 P.3d 921] (*Dickey*), there was no error because a request for new trial based on a defendant's claim of ineffective assistance of counsel does not trigger the court's duty to conduct a *Marsden* hearing if the defendant's desire for substitute counsel is not made clear. We agree with respondent.

When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance. (*People v. Marsden, supra*, 2 Cal.3d at p. 124.) " 'Although no formal motion is necessary, there must be "at least some clear indication by defendant that he wants a substitute attorney." ' (*People v. Mendoza* (2000) 24 Cal.4th 130, 157 [99 Cal.Rptr.2d 485, 6 P.3d 150], quoting *People v. Lucky* (1988) 45 Cal.3d 259, 281, fn. 8 [247 Cal.Rptr. 1, 753 P.2d 1052].)" (*People v. Valdez* (2004) 32 Cal.4th 73, 97 [8 Cal.Rptr.3d 271, 82 P.3d 296].) While the law does not require that defendant use the word *"Marsden"* to request substitute counsel, we will not find error on the part of the trial court for failure to conduct a *Marsden* hearing in the absence of evidence that defendant made his desire for appointment of new counsel known to the court. (*Dickey, supra*, 35 Cal.4th at pp. 920–921.)

In *Dickey*, the defendant made a posttrial motion not for substitute counsel to represent defendant during the guilt phase, but for appointment of separate counsel to represent him in the preparation of a motion for a new trial, which motion, according to defense counsel, would likely include allegations that defendant received incompetent legal representation in the guilt phase. (*Dickey, supra*, 35 Cal.4th at p. 918.) The trial court appointed separate

counsel who assisted in preparing the motion, which was based, in part, on a claim that defense counsel was ineffective during the guilt phase, and that the court erred in failing to conduct a *Marsden* hearing. (*Id.* at p. 920.) The court denied the motion, finding it was not required to hold a *Marsden* hearing because the defendant had not requested one. (*Ibid.*)

The Supreme Court agreed, saying, "We conclude the court did not commit *Marsden* error. ' "Although no formal motion is necessary, there must be 'at least some clear indication by defendant that he wants a substitute attorney.' " [Citation.]' [Citation.] Defendant did not clearly indicate he wanted substitute counsel appointed for the penalty phase. To the extent he made his wishes known, he wanted to use counsel's assertedly incompetent performance in the guilt phase as one of the bases of a motion for new trial, and he wanted to have separate counsel appointed to represent him in the preparation of such a motion. As his expressed wishes were honored, he has no grounds for complaint now." (*Dickey, supra,* 35 Cal.4th at pp. 920–921, italics omitted.)

Here, like *Dickey*, defendant made no request for substitute counsel, either written or orally to the court. He submitted his January 10, 2007, letter to the court after the jury returned guilty verdicts against him. The letter was entitled, "Request/Petition for new trial" and was treated as such by the court. Like *Dickey*, the court appointed separate counsel to investigate whether there were grounds for a motion for new trial. Appointed counsel here concluded there were not.

▇ While the January 10, 2007, letter to the court and the attached January 8, 2007, letter to counsel both contain complaints regarding the adequacy of defendant's representation at trial, neither one requests substitute counsel to assist defendant in making the motion for new trial, to provide representation at sentencing, or for any other purpose going forward. Indeed, the letter from defendant to Wippert actually requests that Wippert meet with defendant, "concentrate on getting us a new trial" and "be ready to submit our motion to appeal immediately," all requests that are utterly inconsistent with a request for substitute counsel. Not only do the letters not mention a desire to obtain substitute counsel, defendant also failed to make any such desire known during his colloquy with the court or at any other time during any of the hearings.

Defendant relies on *People v. Eastman* (2007) 146 Cal.App.4th 688 [52 Cal.Rptr.3d 922] and *People v. Mendez* (2008) 161 Cal.App.4th 1362 [75 Cal.Rptr.3d 162]. However, neither of those cases discusses *Dickey* or the rule of law contained therein, and we respectfully decline to follow them. We find no error here.

## DISPOSITION

The judgment is affirmed.

Davis, J., and Nicholson, J., concurred.

On February 24, 2009, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied April 29, 2009, S171426.

## APPENDIX A

Dwayne Richardson X-4036254
R.C.C.C./MS-B-36
125 Bruceville Road
Elk Grove, CA 95757

Honorable Judge Balonon
Sacramento County Superior Court
of California, Dept. 14
720 Ninth Street
Sacramento, CA 95814

**FILED/ENDORSED**
**JAN 12 2007**

January 10, 2007

Re: Case #06F09411, Dwayne Richardson (X-4036254)
    Request/Petition for new trial.

Dear Judge Balonon,

On 12/29/06, a jury found me guilty of Assault, Burglary, and Kidnapping. I really don't know how they come to this verdict. The evidence and testimony presented did not support the claims of the prosecution.

The DP witnesses gave conflicting testimony so he had to attack the character of his own witness.

There were 4 other possible suspects that were there and apart of the situation -(3 of which have criminal records) but were not charged. And, one of these guys even had identical shoes to the print on the door as were mine, though his were never compared.

The "alleged" weapon, a knife, was never proved to have been in my possession. It was, in fact, taken as evidence from a case on the dresser of the resident. Further, the "alleged" victim was recorded on the 911 call tape as stating there was no weapon.

My own attorney, it seems, turned on me as both he and his investigator, Lori Brown, went through considerable effort to persuade me not to take the stand and testify for myself. In fact, he saw me before trial and not only promised me that the worst case scenario would be a conviction for "Destruction of Property," and instructed me to lie to the Court when asked if my decision not to testify was my own. I wanted to testify and speak for myself.

Further, we had at least four witnesses to testify for the defense that my attorney never called to the stand. Nor, did he so much as raise a protest upon

the reading of the verdict he <u>knows</u> was wrong. Actually, it should be my attorney being the one to address the Court about a new trial, but he's no longer taking calls from me or my family.

Sir, I do not know or understand the criminal justice system, but it seems to me that things should not have worked out the way they did. This whole thing is wrong, and I <u>can</u> all explain it if given 1/2 the chance. I am hopeful that with your courtroom experience would have also seen the wrongness of the outcome of this trial.

I don't know how it's supposed to be done, but with this letter, I would like to petition your Court for a new trial.

I am anxiously awaiting your reply. Your time and attention is greatly appreciated. Thank you.

Sincerely yours, /s/

Dwayne Richardson

X-4036254

## APPENDIX B

Dwayne Richardson X-4036254
R.C.C.C./MS-B-36
125 Bruceville Road
Elk Grove, CA 95757

Scott S. Wippert
Attorney at Law
716 10th Street, Suite 300-2
Sacramento, CA 95814

January 8, 2007

Re:  Lack of communication, filing motions and appeals, and an
explanation for your lack of action in trial.

Dear Scott,

My family and I both have been trying to contact you without any replies to our calls. I very much need to see you.

I am anxious to file a motion requesting a new trial as the D.A.'s case clearly did not support the verdict. They "proved" nothing, but were believed. Also, I really think we should have not only have to put "our" witnesses on the stand, but that I should have taken the stand myself. That you argued me out of doing and having me lie to the Court about that. I wanted to testify.

I believe that we should be ready to submit our motion to appeal immediately. And I am hopeful that I may be allowed to remain in County Jail during the appeals process. But, first, concentrate on getting us a new trial, please!!!

Why didn't you speak up when the Judge asked you if you had anything to say after the verdict was read? How could you have promised me that they'd never find me guilty of nothing more than destruction of property? Why did you insist I don't testify a explain for myself what happened. You know I'm not guilty of this stuff, why didn't you convince them of that?

We need to talk! A.S.A.P!

Please come see me. And, call my family back, OK?!

Very truly yours,

/s/ Dwayne Richardson

## APPENDIX C

Dwayne Richardson X-4036254
R.C.C.C./MS-B-36
125 Bruceville Road
Elk Grove, CA 95757

Honorable Judge Balonon                              **RECEIVED**
Sacramento County Superior Court                     **NOV-5 2007**
of California, Dept. 14
720 Ninth Street
Sacramento, CA 95814

February 27, 2007

Re:  Petition/Motion for new trial, case #06F09411, Appointment of
     counsel for review of issues. Request for full access to Trial
     records/transcripts

Dear Judge Balonon,

On or about the 10th of last month I wrote you a letter attesting to
irregularities that occurred with my attorney and the presentation of the
prosecution and defense (or the lack thereof). And, I submitted my request for
a new trial in the hope that the ends of justice truly be served.

Apparently, you also noted the possibility of some irregularities and
appointed Mr. Joseph B. de Illy to look into it in what seems to be a very
limited scope, to focus only on the issues of my trial attorney instructing me
to lie about it being <u>my</u> decision <u>not</u> to testify in my own defense and about
no promises being made. Plus, my trial attorney's failure to call any witness
at all for the defense.

It is the very limited scope of the appointment of Mr. De Illy for which I
am again writing to you. I have interviewed with Mr. de Illy and he has given
me copies of the documents that he was allowed to review in my behalf
which looking into those two points. Those documents only amounted to the
basic discovery reports. He says that was all he was allowed to review.

Your Honor, if we are to truly ascertain that my defense representation was
not within the realms of propriety and with such, received a fair trial, Then
Mr. de Illy needs to be allowed full access to <u>all</u> the trial's transcripts in
which he can see how my trial attorney's actions throughout the process were
consistently not in my best interests.

The cross-examinations of the state's witnesses were severely inadequate. They weren't questioned as to why none of the other participants of the allegations were not investigated as suspects or charged. Nor, pursue the state's impeachment of their own witness when his testimony favored the defense. Why all the participants/witnesses were not called to testify and clarify the events to the jury from every perspective.

Mr. Wippert, my trial attorney is still lying to me. Told me he was going to admit to the Court what he did about instructing me to lie and his promise to me that: If I listen to him, Don't worry about looking like a bad guy, because I'll be going home. "If you do like I tell you - The worst you'll get is charged with destruction of property and get time served." He's told me he will fully co-operate and do all he can to assist me in getting a new trial, but has only allowed one brief conversation with the attorney you've appointed to look into this matter. That conversation boiled down to Mr. Wippert claiming everything was "Tactical Decisions" that were his to make. And, he has since been avoiding Mr. de Illy's calls. Nor, responded to the numerous messages left by Mr. de Illy.

Sir, not only did my attorney refuse to call those other guys that were there as witnesses, but wouldn't even present my character witnesses. Such neglect seems more like either total ineptitude or deliberate sabotage as poor "Tactical Decisions." For, the other people involved were not charged as co-defendants or suspects, their likelihood of testifying truthfully and not taking "The 5th" more advantageous.

Though it might be claimed that I knowingly and willingly accepted Mr. Wippert's advice, I believe it was more of coercion. I am not a literate person by any means. I have severe learning disabilities, as Mr. Whippert [sic] was made fully aware of by my employer, Karen Chesmore. I have virtually no education to speak of. My reading and writing levels are that of lower grade school. I really did not understand most of what was being said in court, not understanding the vocabulary, nor do I have any prior experiences to fall back on. Usually, I've always tried to be agreeable when I did not understand what was going on so as not to appear stupid. I just know that what has gone on here was wrong and it could have been explained had the jury gotten a chance to get the whole picture.

Now, I need for Mr. de Illy to get the whole picture himself so that he can fully and accurately report back to you. Would you please broaden the scope of his review and allow him full access to all the Trial/Court transcripts of this whole case? This is what he tells me he needs so as to give both you and I an informed determination as to if Justice is being appropriate served here.

I apologize for being long-winded in the writing of this letter, I'm just trying to get my point across as to the necessity of full access and disclosure for Mr. Joseph B de Illy.

Thank you, once again, for attention in this matter.

Sincerely yours,

/s/

Dwayne Richardson/X-4036254

P.S. There is one other issue about the probation report. That is _not_ _my_ criminal record they have printed out in there. Other than traffic tickets and a dismissed possession in 1986, I had one juvenile conviction from 1974. The rest is someone else's.

## APPENDIX D

Dwayne Richardson
X-4036254

Honorable Judge Balonon
Sacramento County Superior Court
of California, Dept. 14720 Ninth Street
Sacramento, CA 95814

**RECEIVED**
**MAR-7 2007**

March 5, 2007

Case #06F09411
Re: Request to consider alternative sentencing option:
    (1) Suspended Sentence to State Prison
    (2) 5-years Felony Probation
    (3) 1-year County Jail (time served)
    (4) No contact w/victim order etc. . . .

Dear Judge Balonon,

Greetings. I am due to next appear in your courtroom on 3/8/07, quite possibly about the same time you receive this letter.

I am very concerned about the findings to date of my new attorney, Mr. de Illy, concerning if there are grounds for a new trial. He doesn't believe he can prove good cause. All I know is that I feel like I'm getting the gooey end of the stick. Something was definitely wrong with how the Trial worked out. Things have been blown all out of proportion to the actual events that took place. And, due to my trial attorney's (Mr. Whippert)'s [*sic*] "Tactical Decisions," all opportunity to not only prove and present my side of the story, but to also dis-prove the State's was lost.

If you are now not in a position to be able to grant me a new trial, maybe you might consider another option.

The probation report is truly worthless as their recommendations are all based on the criminal history of another "Dwayne Richardson." As I've stated before, other than some traffic tickets, my only post criminal conviction was at the age of 15-years, in Baltimore MD, 1974. The charge was a strongarm robbery, and I was released from an adult facility in 1979. There was one other arrest & F.T.A. in 1986 for a drug charge that was dismissed in 1999/2000. No other criminal history exists that pertain to me.

Ever since my release in 1979, I have always been employed in sales and traveling the country. I have no alcohol or drug problems. I still have my job waiting for me, and even possibly an opportunity to start my own sales dept.

So, I guess what I'm trying to get at is if maybe you can see your way to be lenient with me in sentencing. I have already been in custody for almost 8-calendar months. I hope that that would be enough. You see, I really do not anticipate any further negative contacts with the police, so being on probation does not seem like a threat to my future. I am hearing from some of the other inmates of how maybe it may be possible for you to give me a suspended State Prison sentence, grant probation (Felony), order 1-year county jail and order no contact w/victim.

I hope, that in this manner, even worst case scenario, that Justice could be served. I will have served a year. And, if I were criminally inclined, I would soon blow probation and go to prison. And, if I'm the citizen I say I am, This will then all be behind me and I could go back to the work I love and soon be in business for myself and a law abiding citizen.

Well, thank you, Your Honor, for all the time and your considerations throughout this whole ordeal. See you soon, in court.

Very truly yours,

/s/