Filed 4/15/14  P. v. Davis CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>CURTIS J. DAVIS,<br><br>        Defendant and Appellant. | D062881<br><br><br><br>(Super. Ct. Nos. SCE310564 & SCE319395) |

APPEAL from a judgment of the Superior Court of San Diego County, Herbert J. Exarhos, Judge.  Affirmed.

Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Curtis J. Davis appeals from a conviction by jury, claiming the trial court erred in failing to conduct a *Marsden*[1] hearing. Because the record shows Davis fully presented his claim of alleged ineffective assistance of counsel in two significant handwritten letters he sent the court and because the court considered those letters before ruling on his claim, we conclude that the court did not err when it did not conduct a separate *Marsden* hearing. Furthermore, we conclude that the court did not abuse its discretion in denying Davis substitution of counsel based on the content of his letters.

I

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Between the time Davis was convicted and the time he was sentenced, Davis sent two handwritten letters to the trial court explaining why he had allegedly received ineffective assistance of counsel at trial. In the letters, Davis mentioned that trial counsel did not follow Davis's request to call additional witnesses, did not heed Davis's thoughts on jury selection, and did not spend sufficient time with him. Davis also wrote, "I would like to take back my plea[2] . . . and proc[e]ed to trial by judge (you) pro-per [and] fire my lawyer." Davis stated that trial counsel had not explained the plea agreement to him. In the other letter, Davis wrote, "I feel I have ground[s] for a new trial on ineffective [assistance] of counsel."

---

1    *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

2    Davis pleaded guilty in case No. SCE319395 to assault and to damaging a prison or jail. He was convicted of the remaining attempted murder count by a jury the next day. In related case No. SCE310564, Davis pleaded guilty to robbery and possession of methamphetamine for sale.

The record shows at Davis's sentencing hearing, defense counsel brought Davis's letters to the court's attention. The court in response stated it had reviewed the letters. It then denied Davis's motions "both as to the motion for new trial and as to the appointment of counsel" because the court found "nothing [in the letters rose] to the level that would warrant the appointment of counsel." The trial court then proceeded with the sentencing.

On appeal, Davis contends the trial court erred in not conducting a separate *Marsden* hearing in order to evaluate his ineffective assistance of counsel claim.

II

LEGAL PRINCIPLES

A. *Marsden*

"[A] judge who denies a motion for substitution of attorneys solely on the basis of his courtroom observations, despite a defendant's offer to relate specific instances of misconduct, abuses the exercise of his discretion to determine the competency of the attorney." (*Marsden*, *supra*, 2 Cal.3d at p. 124.) When a defendant moves for substitution of appointed counsel, the court must afford the defendant an opportunity to enumerate any specific examples from outside the courtroom of counsel's alleged inadequate representation. (*People v. Smith* (1993) 6 Cal.4th 684, 690-691.) Whether to grant a defendant's request for substitution of appointed counsel is a matter of judicial discretion. (*Id.* at p. 690.) The trial court should appoint substitute counsel when, at any stage of the proceeding (including postconviction), the defendant makes a proper showing under the *Marsden* standard. (*Id.* at p. 696.)

3

A trial court must conduct a *Marsden* hearing "when there is at least some clear indication by the defendant, either personally or through counsel, that the defendant wants a substitute attorney." (*People v. Sanchez* (2011) 53 Cal.4th 80, 84, 91.) A formal legal motion is not necessary. (*Id.* at p. 88.)

B. *Written Letters to the Trial Court*

When, as in the instant case, "the basis of a defendant's dissatisfaction with counsel is set forth in a letter of sufficient detail[,] . . . a full-blown hearing is not required." (*People v. Wharton* (1991) 53 Cal.3d 522, 580 (*Wharton*).) In *Wharton*, the defendant—like Davis here—sent a detailed letter to the trial judge explaining why he was dissatisfied with his attorney. (*Ibid.*) The defendant complained that his attorney did not spend sufficient time with him and was distracted by other cases. (*Ibid.*) Our Supreme Court concluded that a *Marsden* hearing was not required in that situation because the grounds for ineffective assistance (and hence substitution) of counsel had been heard and considered by the trial court through the defendant's letters. (*Id.* at pp. 580-581.) The *Wharton* court thus concluded the trial court could properly find that the defendant's attorney had been adequately prepared. (*Ibid.*)

In a similar case to *Wharton*, *People v. Freeman* (1994) 8 Cal.4th 450 (*Freeman*), our Supreme Court once again concluded that the trial court was not required to hold a *Marsden* hearing when the defendant had itemized his complaint in a "self-contained document." (*Id.* at p. 481.) In *Freeman*, the defendant filed a formal written petition for new counsel on a form that permitted him to state facts which supported his request. (*Ibid.*) Concluding that the defendant already had the equivalent of a *Marsden* hearing, the *Freeman* court stated: "The form he used permitted him to state all reasons for the

4

relief requested. . . . There was no reason for the trial court to suppose defendant withheld his reasons or supporting facts, or wished to state further examples of counsel's inadequate representation. He certainly did not 'offer to relate specific instances of misconduct.'" (*Ibid.*)

III

ANALYSIS

The record here shows the court at sentencing acknowledged Davis's request for substitute counsel. Because a formal motion requesting substitute counsel is not required, Davis's "motion" for appointment of such counsel was properly made through either his letters or defense counsel at sentencing. (See *People v. Sanchez*, *supra*, 53 Cal.4th at pp. 87-88.)

The primary issue here is whether the letters David sent the trial court were sufficient to obviate the need for a separate *Marsden* hearing. We conclude under *Wharton* and *Freeman* that they were. In his correspondence between conviction and sentencing, Davis brings up four reasons he believed he received inadequate representation, thus requiring appointment of substitute counsel. We consider each in turn.

A. *Lack of Time with Counsel*

Davis indicated that he "never met [with his] investigator" and that he saw his appointed counsel only once in a year and a half because counsel happened to have another pending case at the same time. However, there is no reason to believe a *Marsden* hearing would have helped Davis explain anything more on this contention. Similar to *Wharton*, in the instant case "it appears '[t]he court . . . was aware of the grounds for

5

defendant's motion and satisfied itself that counsel was in fact adequately prepared although he might not have communicated fully with his client.' [Citations.]" (See *Wharton*, *supra*, 53 Cal.3d at pp. 580-581.)

B. *Jury Selection*

Davis also noted in his letters that his counsel "kept [on the] jury members [Davis] asked him not to." With respect to peremptory challenges, our Supreme Court has repeatedly rejected claims of ineffective assistance based on the exercise of such challenges, noting the inherently subjective and intuitive nature of the jury selection process. (*People v. Ochoa* (1998) 19 Cal.4th 353, 448.) As such, we conclude a *Marsden* hearing was unnecessary to evaluate further this contention by Davis.

C. *Failure to Call Witnesses*

Davis mentioned in one of his letters that he "gave [his] lawyer a list of people to call who were at the party the morning of the incident . . . ." Davis states that his account of the party was contested at trial and that his witnesses would have provided him an alibi. Davis further alleged in the second letter that defense counsel "never called any witness" Davis asked him to.

Davis's defense to the attempted murder charge was that he was not the person at the store who shot the victim at approximately 7:15 a.m. on December 11, 2009. Davis maintained that he had been with his friend the night before the shooting. According to the defense, "Davis got drunk the night before [the alleged incident] and did not show up. Davis was 'living it up' . . . drinking and smoking marijuana for three days straight, and his memory was foggy."

6

According to the defense, on the morning of the shooting Davis's girlfriend, Bambi Praytor, picked him up at his friend's place. According to the defense, Davis was either with Bambi or at her apartment at the time of the shooting but not at the store where the shooting occurred. Bambi Praytor testified that she picked up Davis from his friend's place at approximately 7:00 a.m., where he had been partying since the previous night.

Davis thus contends the trial court could not have ruled intelligently on his request for new counsel without knowing what witnesses he referenced in his letters or what they would have testified to if they had been called, as he requested of his counsel. In other words, Davis alleges the trial court improperly denied him substitute counsel without following up on his letters by questioning him about his proposed witnesses.

In support of his position, Davis cites to *People v. Stewart* (1985) 171 Cal.App.3d 388, 394-397 (*Stewart*), disapproved on other grounds in *People v. Smith* (1993) 6 Cal.4th 684, 691-696 (*Smith*) and *People v. Winbush* (1988) 205 Cal.App.3d 987.

In *Stewart*, the defendant told the judge he had been inadequately represented because defense counsel did not contact the defendant's personal doctor and because counsel did not call as witnesses two people "on the fourth floor." (*Stewart*, *supra*, 171 Cal.App.3d at p. 398.) The *Stewart* court concluded that, although the doctor's testimony was not material, the trial court improperly denied Stewart's substitution motion without inquiring into the other two witnesses' proposed testimony. (*Ibid.*)

In the instant case, there is no reason to believe Davis had anything more to say regarding the potential alibi witnesses and, as such, no separate *Marsden* hearing was required. His letter mentions that they would confirm his story that he was partying the

7

night prior to and on the morning of the shooting (i.e., "who were at the party the morning of the incident").  Unlike in *Stewart* where the court could not reasonably know what the witnesses on the fourth floor would have said, here, the record does show that the proposed witnesses were allegedly *additional* alibi witnesses.  Because the letters Davis submitted are self-sufficient, we conclude a *Marsden* hearing would have added nothing to Davis's contention.

Further, the court did not abuse its discretion in denying substitution of counsel because it was reasonable to believe that new alibi witnesses, apart from Bambi Praytor, would not change the outcome of the jury when there was other strong evidence of Davis's guilt, such as identification from a lineup by the victim and phone records with text message exchanges between Davis and the victim immediately preceding the shooting.  In fact, Davis, in his own letter to the trial court, mentions, "Yeah, I expected a guilty verdict but not of the higher charge."

D.  *Withdrawal of Guilty Plea*

Davis states in his letter to the trial court, "I would like to take back my plea [and] separate my case from Miss Praytor."  However, the record shows that Davis entered into his plea agreement freely and voluntarily.  Indeed, the record shows the court explained the terms of Davis's plea bargain, and then the following exchange ensued:

"The Court:  Most importantly, Mr. Davis, are you entering this plea freely and voluntarily?

"The Defendant:  Yes, I am.

"The Court:  Nobody is coercing you or forcing you to do it?

"The Defendant:  No.

8

"The Court: Is it safe to say that you have discussed it with your attorney and you have made this decision as a defense tactic and as a part of your strategy, correct?

"The Defendant: Yes, I am.

"The Court: In fact, you're pleading guilty because in fact you really are guilty; is that a fair statement?

"The Defendant: Yes, I am."

In other words, the record shows that Davis was adequately represented at the time his plea was negotiated. Hence, the trial court did not abuse its discretion in deciding not to conduct a separate *Marsden* hearing and appointing Davis new counsel. (See *Smith*, *supra*, 6 Cal.4th at pp. 696-697 [noting that substitution of counsel required an irreconcilable conflict between the attorney and the defendant during events preceding the guilty plea].)

In sum, we conclude there was no necessity for a separate *Marsden* hearing under the facts before us because the two letters Davis wrote to the trial court were self-contained and sufficiently apprised the court of the reasons for his request for substitute counsel.

## IV

## DISPOSITION

The judgment of conviction is affirmed.

BENKE, Acting P. J.

WE CONCUR:

O'ROURKE, J.

IRION, J.