Filed 4/27/15  P. v. Thompson CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>STEVEN THOMPSON,<br><br>Defendant and Appellant. | C073728<br><br>(Super. Ct. No. 10F04803) |

A jury convicted defendant Steven Thompson of assault with a deadly weapon by a state prisoner (Pen. Code, § 4501)[1] and possession of a sharp instrument by an inmate (§ 4502, subd. (a)) while sustaining allegations for personally inflicting great bodily injury (§ 12022.7, subd. (a)) and three strikes (§§ 667, subd. (e)(2)(C), 1170.12,

---

[1]  Undesignated statutory references are to the Penal Code.

1

subd. (c)(2)(C)). The trial court sentenced defendant to serve 28 years to life in prison in this case.

On appeal, defendant contends the trial court erred in failing to appoint substitute counsel to assist him in arguing his motion for a new trial based on ineffective assistance of counsel. He further argues the trial court's denial of his motion for a continuance to conduct DNA testing was an abuse of discretion.

We disagree with both contentions. The trial court did not err in not appointing substitute counsel because defendant's claims of ineffective assistance of counsel were resolved in prior hearings, tactical matters within trial counsel's discretion, trial matters the trial court could address without the need for substitute counsel, claims that did not present a colorable claim of ineffective assistance, or claims that did not result in any prejudice. As to the second contention, we conclude the trial court was within its discretion to deny the continuance motion. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*The Crimes*

On April 15, 2010, Correctional Officer Robert Masterson saw defendant, an inmate at California State Prison, Sacramento, attack inmate Michael Harrell from behind. He saw defendant make a stabbing motion towards Harrell, but did not see a weapon in his hand. Harrell sustained three penetrating stab wounds three-quarters of an inch deep to his back, which caused bleeding into his chest cavity.

Correctional Sergeant John Baker heard an officer call for prisoners in the yard to get down. He turned and saw Harrell and several other inmates attacking defendant. Sergeant Baker had to grab Harrell and drag him away from defendant. Harrell was very angry and threatened to "get" defendant.

Correctional Officer William Brown saw several inmates attacking defendant. Officer Brown had to pepper spray the inmates after they refused to comply with his orders to stop the assault.

A knife and a sheath that fit the knife were found in the area after the attack. No fingerprints were found on the knife. A videotape of the incident was admitted into evidence and the testifying officers were questioned at length by the prosecution and the defense about the video and still shots taken from it.

Testifying, defendant denied stabbing Harrell and did not see the stabbing. According to defendant, another inmate blamed him for the attack and some inmates then came after him. Defendant said Officer Masterson was angry with him because Masterson thought defendant had accused him of taking $600 worth of aluminum cans.

### Procedural History

### Pretrial

The trial court heard six *Marsden*[2] motions in this case and another was withdrawn by defendant. In the first *Marsden* motion, made before the preliminary hearing, defendant asked to replace his public defender with Jon Lippsmeyer, an attorney who had represented him in a prior case. That *Marsden* motion was denied but Lippsmeyer was substituted for the public defender after defendant's second *Marsden* motion was granted.

At the third *Marsden* hearing, defendant complained the correctional officers could not have seen what they claimed to have seen at the time of the stabbing, and Lippsmeyer failed to take the photographs that would prove that. Lippsmeyer explained he went to the prison two times to have photographs taken, but the officer taking the photographs did not capture what the defense wanted. The trial court denied the motion.

---

[2]     *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

Defendant renewed his complaints about deficient photographs at the fourth *Marsden* hearing. He told the trial court Lippsmeyer failed to obtain adequate photographs in spite of going to the prison three times to take them, and was instead planning to get the court's permission for a jury visit to the prison or to submit a contour map of the prison. In denying the motion, the trial court told defendant Lippsmeyer had no control over some of the items he complained about, and Lippsmeyer had "made voluminous requests for discovery," some of which were pending.

Defendant's fifth *Marsden* motion was heard and denied on the first day of trial. Defendant complained Lippsmeyer's opening statement was disjointed and counsel was "totally unprepared" and "could not get to the points." Defendant also complained Lippsmeyer was not asking the questions defendant told him to ask, failed to obtain photographs of the prison surveillance cameras, and did not get the written description of the job responsibilities for a correctional officer. The trial court denied the motion.

### *Posttrial Motions*

Following defendant's conviction, Lippsmeyer brought a motion to continue sentencing to allow DNA testing of the knife, sheath, and a bloody bag found after the stabbing. In his declaration in support of the motion, Lippsmeyer also informed the trial court defendant sent him a letter specifying points defendant thought constituted ineffective assistance of counsel, and defendant wanted those items brought to the court's attention.

At the hearing on the continuance motion, the trial court asked defendant to explain his dissatisfaction with Lippsmeyer's representation. In response, defendant made what his appellate counsel correctly characterizes as "a long, rambling list of

4

complaints against defense counsel."[3] Defendant's problems with Lippsmeyer's representation are summarized as follows: (1) failed to investigate whether the surveillance video had been tampered with; (2) inadequate cross-examination of Officer Masterson regarding his location when he saw the stabbing; (3) did not get useful photographs of the prison yard where the stabbing took place and allowed the use of "completely doctored" photographs; (4) did not investigate the prosecutor for failing to turn over discovery and for lying in court that she glanced at and then shredded a report accidentally sent to her; (5) did not get the names of the other inmates in the yard when the stabbing occurred; (6) failed to follow defendant's instructions regarding cross-examination, subjects not to address at trial, and the opening statement; (7) counsel "dragged on" and "would not get to the points"; (8) failed to follow defendant's warnings about prison mail being opened including litigation matters in prison mail; and (9) taking constant cigarette breaks rather than meeting with defendant. During this explanation, defendant also made three separate requests for appointment of substitute counsel pursuant to *People v. Stewart* (1985) 171 Cal.App.3d 388 (*Stewart*) (disapproved on other grounds in *People v. Smith* (1993) 6 Cal.4th 684 (*Smith*)).

Lippsmeyer replied that he did not know if every one of defendant's complaints concerned a tactical matter, and some may raise "minor mistakes" by counsel. Regarding defendant's primary contention, failing to attack the video, Lippsmeyer said it would not make sense to argue the video was tampered with because the defense was presenting the video as an exhibit. Lippsmeyer continued by saying the rest of defendant's claims concerned matters that did not make any difference to the trial. He also said there was no

---

[3] Defendant's reply and subsequent colloquy with the trial court regarding his complaints takes 28 pages of transcript, most of which consists of defendant's complaints and the trial court's efforts to have defendant state them succinctly and coherently.

way he could prove the alleged misconduct by the prosecutor. The prosecutor, who was present while defendant made his complaints, stated she was unaware of the allegation of misconduct and defendant's allegations addressed essentially tactical issues.

The trial court ruled Lippsmeyer provided defendant with effective representation and there were good tactical reasons for his decisions. Additionally, the court noted that during the course of the trial, defendant "continuously interrupted" Lippsmeyer. "[O]n multiple occasions," the court saw Lippsmeyer patiently listen to defendant's communications, and "in many instances clearly asked the questions [defendant] wanted him to ask." Watching Lippsmeyer during the proceedings, the trial court "was impressed by his patience, by his long suffering, by the fullness and completeness and diligence that he attached to each and every witness." The trial court rejected "each and every issue" raised by defendant regarding Lippsmeyer's competency and found counsel "was effective under the most difficult of circumstances with a very difficult client."

The trial court next addressed the motion to continue sentencing for DNA testing. Defense counsel's declaration in support of the motion stated counsel did not seek DNA testing of the knife, sheath, or bloody bag at defendant's request. Lippsmeyer did not explore DNA testing before trial because defendant did not want his case being dismissed, which would have adverse consequences in future parole hearings. After speaking to an attorney familiar with DNA defenses and the indigent defense panel executive director, Lippsmeyer concluded he had a duty to investigate defenses even if defendant explicitly precluded him from doing so, and his failure to obtain the DNA testing constituted ineffective assistance of counsel. He asked for a 45-day continuance of the sentencing hearing to have DNA tests administered on the three items.

In response, the prosecutor argued defendant had several postconviction remedies, habeas corpus, appeal, and a motion by a prisoner for DNA testing pursuant to

section 1405. Since none of these remedies could be raised in a motion for new trial, the prosecutor asked the trial court to deny the motion.

Arguing to the trial court, Lippsmeyer stated there was no tactical reason not to get DNA tests for the knife, sheath, and bag. The trial court denied the motion, finding that failing to get DNA testing was neither below professional standards nor prejudicial to defendant. The court noted there was a significant amount of blood "all over the yard" because Harrell had been stabbed. In addition, "there were a lot of inmates striking other inmates," including defendant. The jury was able to identify defendant as the perpetrator from the eyewitness testimony and the video, and therefore, "whoever's blood is on that bag would not have changed the outcome of this case."

## DISCUSSION

### I

### *New Trial Motion*

Defendant contends the trial court erred by refusing to comply with defendant's repeated requests to appoint substitute counsel to help him with his motion for new trial based on ineffective assistance of counsel. He argues he was entitled to the appointment of substitute counsel pursuant to *Stewart*, *supra*, 171 Cal.App.3d 388, because his motion for a new trial and Lippsmeyer's motion for DNA testing presented claims of ineffective assistance of counsel regarding matters taking place both inside and outside the courtroom. Finally, defendant argues the trial court committed prejudicial error by conducting the hearing on defendant's new trial motion with the prosecutor present.

A claim of ineffectiveness of counsel may be raised in a new trial motion. (*Smith, supra,* 6 Cal.4th at p. 693.) The defendant must establish " 'trial counsel failed to perform with reasonable diligence and that, as a result, a determination more favorable to the defendant might have resulted in the absence of counsel's failings.' [Citations.]" (*Id.* at p. 691.) The standard is the same whether the motion is made before or after trial. (*Id.*

7

at p. 696.) "[S]ubstitute counsel should be appointed when, and only when, necessary under the *Marsden* standard, that is whenever, in the exercise of its discretion, the court finds that the defendant has shown that a failure to replace the appointed attorney would substantially impair the right to assistance of counsel [citation], or, stated slightly differently, if the record shows that the first appointed attorney is not providing adequate representation or that the defendant and the attorney have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citation]." (*Smith, supra,* at p. 696.) The decision to appoint new counsel lies in the sound discretion of the trial court and "will not be overturned on appeal absent a clear abuse of that discretion." (*Ibid.*)

"If the claim of inadequacy relates to courtroom events that the trial court observed, the court will generally be able to resolve the new trial motion without appointing new counsel for the defendant. [Citation.] If, on the other hand, the defendant's claim of inadequacy relates to matters that occurred outside the courtroom, and the defendant makes a 'colorable claim' of inadequacy of counsel, then the trial court may, in its discretion, appoint new counsel to assist the defendant in moving for a new trial. [Citation]' [Citation.]" (*Smith, supra*, 6 Cal.4th at pp. 692-693.) That is, defendant is required to "credibly establish[] to the satisfaction of the court the possibility that trial counsel failed to perform with reasonable diligence and that, as a result, a determination more favorable to the defendant might have resulted in the absence of counsel's failings." (*Stewart, supra*, 171 Cal.App.3d at p. 397.)

There was no abuse of discretion here. Some of the points brought up in defendant's motion -- the failure to obtain adequate photographs of the yard, failure to follow defendant's instructions on questioning or the opening statement -- were addressed by the trial court in defendant's *Marsden* motions. Other claims were clearly

tactical matters within trial counsel's discretion or trial matters the trial court could address without the need for substitute counsel.

The alleged failure to investigate whether the videos were "doctored" was a tactical matter because, as trial counsel pointed out, claiming they were doctored would undercut the defense that was based on the video of the incident. Declining to follow defendant's instructions on matters to address at trial is also a tactical consideration within counsel's discretion. Defendant's allegations that counsel's cross-examination of Officer Masterson was deficient or counsel would "drag on" are the type of courtroom events the trial court could determine without the assistance of substitute counsel.

The other grounds alleged by defendant did not present a colorable claim of ineffective assistance. Defendant did not specify what discovery was withheld by the prosecutor. His contention counsel should have investigated the prosecutor's alleged lie about glancing at and shredding a report accidentally sent to her would, as Lippsmeyer said, give him an almost impossible task of proving bad faith by the prosecutor.[4] The contention that defense counsel did not get the names of the other witnesses in the yard is wrong; counsel received discovery of the inmates the People intended to call, but also sought the names of inmates in photographs of the incident. While the prosecution tried to comply, it could not identify every inmate in the photographs. Defendant's proof legal mail was opened consisted of his statement, "I made a system like I can get them stealing on this specific date, and I get them photocopied," and he made a copy of an item that was improperly opened. The lack of any correlation between the proof claimed by defendant and the alleged violation makes it no more than a bare allegation rather than a

---

**4** The prosecutor told the trial court regarding defendant's allegation of prosecutorial misconduct: "That's news to me today. Frankly, I didn't really understand what he meant."

9

colorable claim of ineffective assistance.  Defendant's claim Lippsmeyer took frequent cigarette breaks rather than meet with him is contradicted by Lippsmeyer's considerable knowledge of defendant's many requests regarding the conduct of the trial and the preparation of his defense.

We also reject defendant's contention that substitute counsel must be appointed based on Lippsmeyer's claim he was ineffective in failing to obtain DNA testing.[5] Substitute counsel is appointed because of the inevitable conflict with a trial counsel litigating a claim that he or she provided ineffective representation for defendant.  "It is true that when a defendant claims after trial or guilty plea that defense counsel was ineffective, and seeks substitute counsel to pursue the claim, the original attorney is placed in an awkward position.  The attorney must defend against charges from the very client he or she is supposed to be representing.  The potential for conflict is obvious.  But the same potential for conflict exists before trial as well.  And the conflict is unavoidable." (*Smith, supra*, 6 Cal.4th at p. 694.)  Here, Lippsmeyer acknowledged deficient performance in that he failed to obtain DNA testing.  Thus, under these circumstances, substitute counsel was not necessary to argue ineffective representation by trial counsel.

Additional grounds justify not appointing substitute counsel.  Since the crime scene contained large amounts of the victim's blood, and the ensuing melee after the attack made for a messy crime scene, the presence of another person's DNA would not necessarily exonerate defendant.  Likewise, if defendant's DNA was not found on any of

---

[5]     Defendant also contends separate counsel must be appointed based on several possible ineffective assistance claims we have already determined were addressed by the trial court in defendant's *Marsden* motions, tactical matters within trial counsel's discretion, trial matters the trial court could address without the need for substitute counsel, or claims that did not present a colorable claim of ineffective assistance.

the items connected to the crime, that would not mean he did not commit the stabbing, as a person's DNA is not necessarily left on every item he or she touches.  Thus, it is not reasonably likely a different result would have been obtained even if DNA testing were done and revealed the absence of defendant's DNA or the presence of another prisoner's DNA.  Under these circumstances, it was unnecessary for the trial court to appoint counsel to argue prejudice stemming from trial counsel's admitted deficient performance in failing to have DNA testing done.

Nor do we find any error in holding the hearing on defendant's motion for a new trial with the prosecutor present.  Defendant cites no authority holding that a *Marsden* hearing related to a new trial motion grounded in ineffective assistance of counsel must be held in camera.  "[I]n order to convince a trial court that counsel should not continue in his [or her] representation a defendant will be required to disclose strategy or evidence to which the prosecutor might not otherwise be privy.  This fact, and the fact that the People will generally have no interest in having the defendant represented by a particular attorney, render the *in camera* option a useful tool in the administration of justice.  For these reasons we agree that 'the better practice [in a *Marsden* hearing] is to exclude the district attorney when a timely request is made to do so by the defendant or his [or her] counsel.  In the absence of a request, the trial court should exclude the district attorney whenever information would be presented during the hearing to which the district attorney is not entitled, or which could conceivably lighten the prosecution's burden of proving its case.' " (*People v. Dennis* (1986) 177 Cal.App.3d 863, 871.)  Defendant's motion addressed only retrospective matters, his claims on what Lippsmeyer should have done in preparing the defense and during the trial.  Since the prosecution had already proved its case at the time of the new trial motion, it was not an abuse of discretion to allow the prosecutor to be present at the hearing on defendant's motion. (See *People v. Madrid* (1985) 168 Cal.App.3d 14, 19 [not abuse of discretion to hold *Marsden* hearing

11

with prosecutor present where no objection and stated basis for *Marsden* motion would not disclose any inappropriate information to the prosecution].)

Since the matters raised by defendant were directly observed by the trial court, were previously litigated in *Marsden* motions, or did not present a colorable claim of ineffective assistance, we conclude the trial court did not abuse its discretion when it denied the motion for a new trial without appointing substitute counsel.

## II

### *Continuance for DNA Testing*

Defendant contends the denial of his motion for a continuance to conduct DNA testing of the knife, sheath, and bloody bag was an abuse of discretion.

"A continuance in a criminal case may be granted only for good cause. (§ 1050, subd. (e).) Whether good cause exists is a question for the trial court's discretion. [Citation.] . . . While a showing of good cause requires that both counsel and the defendant demonstrate they have prepared for trial with due diligence [citation], the trial court may not exercise its discretion 'so as to deprive the defendant or his [or her] attorney of a reasonable opportunity to prepare.' [Citation.]" (*People v. Doolin* (2009) 45 Cal.4th 390, 450.) "In reviewing the decision to deny a continuance, '[o]ne factor to consider is whether a continuance would be useful.' [Citation.]" (*People v. Mungia* (2008) 44 Cal.4th 1101, 1118.) The trial court has discretion to determine whether to grant or deny a motion for continuance. (*People v. Sakarias* (2000) 22 Cal. 4th 596, 646.) " '[A]n order of denial is seldom successfully attacked.' [Citation.]" (*People v. Beeler* (1995) 9 Cal. 4th 953, 1003.)

In order for the continuance to be useful, the posttrial DNA testing must have provided evidence sufficiently favorable to the defense to support a motion for new trial or a judgment of acquittal. As we have already noted in part I, defendant's contention relies on unwarranted assumptions that DNA evidence other than the victim's blood

would be found, and this evidence would somehow exonerate him.  Nothing in the record or in the arguments presented at trial or on appeal supports either assumption.

Based on the record, we conclude the trial court was within its discretion to deny the motion for a continuance.

DISPOSITION

The judgment is affirmed.


      HOCH     , J.


We concur:


     HULL     , Acting P. J.


     MURRAY   , J.