Filed 12/15/15  P. v. Maestas CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C074776 |
| Plaintiff and Respondent, | (Super. Ct. No. CM035276) |
| v. | |
| LENNY ROSS MAESTAS, | |
| Defendant and Appellant. | |

Defendant Lenny Ross Maestas was found guilty of being a felon in possession of a firearm.  Defendant now challenges:  (1) the trial court's admission of the statements he made before he received his *Miranda*[1] warnings; (2) the court's response to a jury question about possession; and (3) the court's denial of his request for the appointment of new counsel to present a motion for a new trial.  Finding defendant forfeited any claim of

---

[1]    *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].

error with respect to the court's response to the jury's question and finding no merit in his other arguments, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 16, 2011, at 10:15 p.m., City of Oroville Police Officer Ron Belser was on patrol with Reserve Police Officer Sal Rodrigo. While patrolling an area where drug trafficking and burglaries occur frequently, Officer Belser noticed a gold car, driven by defendant, going five to 10 miles per hour in a 25-mile-per-hour zone. Officer Belser thought defendant was possibly "monitoring the roadway looking for target vehicles, [a] target house or possible gang activity." Officer Belser ran the car's license plate number through dispatch and learned the car's registration was expired. Upon learning the car's registration was expired, Officer Belser told Officer Rodrigo to make a U-turn and pull defendant over. Defendant eventually pulled over to the side of the road.

Officer Belser approached defendant and asked him who the car belonged to and questioned him about the expired registration. Defendant told Officer Belser that the car belonged to his girlfriend, but also that he and his girlfriend bought the car. During the stop, Officer Belser noticed defendant's license plate had a November registration tag placed over an April tag, even though dispatch reported the car's registration expired in April.

At Officer Belser's request, defendant got out of the car and underwent a series of field sobriety tests, but defendant was not found to be under the influence of any controlled substances. After defendant completed the field sobriety tests, he sat on the car's bumper, covering the trunk area with his body. Officer Belser thought defendant was hiding something in the trunk. Officer Belser told defendant to stand near the front of the patrol car and then placed defendant under arrest for false registration.

After his arrest, defendant consented to a search of the car. When Officer Belser searched the trunk, he found a loaded pistol in a closed compartment. Officer Belser took the pistol out of the trunk, and defendant "spontaneously said, 'That's not stolen.' "

2

Officer Belser asked defendant how he knew the pistol was not stolen, and defendant told Officer Belser the pistol belonged to a friend but refused to tell the officer the friend's name. Officer Belser next asked defendant questions specific to the pistol, and defendant told the officer "he thought he had taken it out of the car." Defendant also said "he had been doing some target practicing." Officer Belser asked defendant "how he did at target practicing and he said, 'Good.' " Based on defendant's answers to Officer Belser's questions about the pistol, Officer Belser asked defendant if he " 'ever had been convicted of a felony,' " to which defendant responded that he had been convicted " 'for possession of a controlled substance.' "

Defendant was ultimately charged with possession of a firearm by a felon. The information also alleged a prior prison term enhancement. After the jury found defendant guilty of the possession charge and after the court, in a bifurcated proceeding, found the prior prison term allegation to be true, the court sentenced defendant to an aggregate prison term of four years.

DISCUSSION

I

*Miranda*

At trial, Officer Belser testified about the night he arrested defendant. The prosecutor asked Officer Belser about his exchange with defendant concerning the pistol after defendant said, " 'That's not stolen.' " When the prosecutor asked Officer Belser if defendant said anything else about the pistol, defendant objected. Outside the presence of the jury, defendant claimed the police officer's testimony regarding what defendant said about the pistol violated his *Miranda* rights because defendant was under arrest but had not been given *Miranda* warnings. The prosecutor conceded defendant was in custody when Officer Belser asked the questions about the pistol but argued the questions did not constitute an interrogation for purposes of *Miranda*.

3

The trial court partially sustained and partially overruled defendant's objection. The court characterized Officer Belser's questions about how defendant knew the pistol was not stolen, the investigative questions to which defendant responded that he thought he had taken the pistol out of the car, and the question about how defendant did during target practice as "neutral questions" not subject to a *Miranda* warning. In reference to Officer Belser's questions about defendant going target shooting, the court noted: "It's legal to go target shooting. There's no indication there's an illegal activity at this point." The court did suppress Officer Belser's question of whether defendant was ever convicted of a felony, finding the question was designed to elicit an incriminating response.

On appeal, defendant disputes the trial court's finding that the admitted questions about the pistol did not constitute an interrogation and argues Officer Belser's questioning about the pistol "[w]as the [f]unctional [e]quivalent of an [i]nterrogation [b]ecause [t]hose [q]uestions [w]ere [l]ikely to [e]licit [i]ncriminating [s]tatements." (Bold text omitted.) We disagree.

"[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police." (*Rhode Island v. Innis* (1980) 446 U.S. 291, 301 [64 L.Ed.2d 297, 308], fn. omitted.) Because the finding of whether an interrogation occurred "appears to be a predominantly factual mixed question" (*People v. Mickey* (1991) 54 Cal.3d 612, 649), "[w]e review the trial court's finding regarding whether interrogation occurred for substantial evidence or clear error" (*People v. Clark* (1993) 5 Cal.4th 950, 985, disapproved on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22).

4

While defendant does not dispute the admissibility of his spontaneous statement about the pistol, he claims Officer Belser's questions in response to his spontaneous statement constituted an interrogation. But "not all questioning of a person in custody constitutes interrogation under *Miranda*." (*People v. Ray* (1996) 13 Cal.4th 313, 338.) More importantly, a question posed in response to a statement that "in form and content invite[s] the hearer to request clarification" is not designed to elicit an incriminating response. (*People v. Franzen* (2012) 210 Cal.App.4th 1193, 1199, 1203 [reasoning that a booking officer's question, "What guy?," in response to the defendant's statement, " 'It's probably the guy looking for his money,' " regarding why her phone was ringing, was a neutral question and was not designed to elicit an incriminating response because the defendant's comment invited a request for clarification].)

Similarly to the booking officer's question in *Franzen*, Officer Belser's question of " 'How do you know it's not stolen?' " was posed in response to defendant's spontaneous statement that the pistol was not stolen, which invited a response for clarification. It was thus reasonable for the trial court to find that Officer Belser's question of " 'How do you know it's not stolen?' " was "neutral" and not designed to elicit an incriminating response because the spontaneous statement made by defendant invited a request for clarification.

Contrary to defendant's position, this case is similar to *People v. Gamache* (2010) 48 Cal.4th 347. In *Gamache*, the booking deputy asked the defendant about his military past. (*Id.* at p. 384.) The defendant talked about his military past but also gave the deputy information about the crimes he was arrested for, saying " 'I fucked up. I knew better. I should have used a .45.' " (*Ibid.*) The deputy then asked the defendant what had happened, how defendant felt, and about one of the victims. (*Ibid.*) The defendant responded to each question with incriminating statements. (*Ibid.*)

In *Gamache*, our Supreme Court noted "the police 'may speak to a suspect in custody as long as the speech would not reasonably be construed as calling for an

5

incriminating response.' " (*People v. Gamache*, *supra*, 48 Cal.4th at p. 388, quoting *People v. Clark*, *supra*, 5 Cal.4th at p. 985.)  The court held the statements the defendant made to the booking deputy "were not the product of an interrogation." (*Gamache*, at p. 387.)  The court reasoned the booking deputy's questions, even though they related to the crimes for which the defendant was arrested, were " 'neutral inquir[ies]' " that "did not convert [the defendant]'s volunteered admissions into the product of interrogation." (*Id.* at p. 388, quoting *People v. Ray*, *supra*, 13 Cal.4th at p. 338.)

Our Supreme Court's reasoning in *Gamache* supports the trial court's finding that, with the exception of the excluded question about whether defendant had ever been convicted of a felony, the questions Officer Belser asked defendant about the pistol did not constitute an interrogation.  Officer Belser's questions did not relate to the crime for which defendant was originally arrested, and they did not relate to the crime with which defendant was ultimately charged -- being a felon in possession of a firearm -- as there was no evidence the officer knew at the time of the questions that defendant had a felony conviction.  Instead, it appears the officer simply sought clarification of defendant's spontaneous statement that the gun was not stolen and the officer's questions could reasonably be characterized as neutral inquiries that were not likely to elicit an incriminating response.  Thus, the trial court's finding that Officer Belser's questions about the pistol did not constitute an interrogation was supported by substantial evidence.

II

*The Jury's Request For Clarification*

During jury deliberations, the jury sent the court a question.  The jury asked, "Does knowing gun is in . . . existence . . . prove possession . . . of firearm, . . . or are we responsible for what's in the trunk of someone else's car?"  The court discussed the jury's question with counsel for both parties.  Defense counsel, Robert Radcliffe, said, "[t]he legal answer to both parts is no."  The prosecutor suggested the jury be told to look to the jury instructions to answer its question.  Defense counsel immediately said, "I'll

6

submit it to the Court. That's often times [*sic*] the response." The court agreed with defense counsel that the answer to both questions was "no" but also agreed with the prosecutor that the jury should be told to review the jury instructions for the appropriate legal standard. The court asked counsel if directing the jury to review the jury instruction was a sufficient response to the jury's question, and defense counsel said, "I'll submit it to the Court. [¶] Okay." The court then directed the jury to refer back to the jury instructions.

Defendant argues the court's response to the jury's inquiry was "inadequate because it failed to clear up the confusion that prompted the question in the first place." Because defendant failed to preserve this issue for appeal, we do not express an opinion on whether the court's response was adequate.

A defendant's failure to object to a trial court's proposed response to a jury question forfeits any claim of error and may be regarded as showing "tacit approval of the trial court's decision." (*People v. Boyette* (2002) 29 Cal.4th 381, 430.) More importantly, "[w]here . . . appellant consents to the trial court's response to jury questions during deliberations, any claim of error with respect thereto is waived." (*People v. Bohana* (2000) 84 Cal.App.4th 360, 373.) Finally, where the defendant both suggests and consents to the trial court's response to a jury inquiry, the defendant forfeits any claim of error. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1193.)

Here, while defense counsel did state that the legal answer to both parts of the jury's question was "no," he did not suggest that the court's response to the jury be "no." On the contrary, when the prosecutor made the suggestion that the court should refer the jury back to the jury instructions, defense counsel did not argue for a different response, but instead stated, "That's often times [*sic*] the response." More importantly, after defense counsel told the court referring the jury back to the jury instructions was "often times [*sic*] the response," the court took the statement to mean that defense counsel was suggesting that the court refer the jury back to the jury instructions. Defense counsel

7

made no attempt to correct the court's understanding of his position. Finally, the court asked both parties if directing the jury to refer to the jury instructions was a sufficient response and defense counsel responded in the affirmative. Thus, because defendant did not suggest an alternative response to the jury's inquiry, because he agreed with the prosecutor's suggestion that referring the jury back to the jury instructions was an appropriate response, and because defense counsel answered in the affirmative when the court asked if its response to the jury was sufficient, defendant forfeited any claim of error.

## III

### *Cumulative Error*

Defendant contends that the cumulative effect of the foregoing errors requires reversal. Not so. Because no error has been shown and because defendant did not preserve one of the two issues he claims resulted in cumulative error for appeal, there could be no cumulative effect.

## IV

### *Appointment Of New Counsel To Prepare A Motion For A New Trial*

After the jury found defendant guilty and after the court found the prior prison term allegation to be true, defendant asked for a new trial based on ineffective assistance of counsel. The court held a *Marsden*[2] hearing to determine whether new counsel should be appointed to prepare defendant's motion for a new trial.

During the hearing, Radcliffe testified "[he] did [his] best to prepare for the trial." Defendant told the court he asked Radcliffe to get Officer Belser's work log schedule, but Radcliffe refused. Defendant claimed Officer Belser was not the officer who pulled him over. Radcliffe said defendant first raised his claim regarding Officer Belser during the

---

[2]     *People v. Marsden* (1970) 2 Cal.3d 118.

preliminary examination. Radcliffe thought defendant was wrong because the police report said Officer Belser was the officer who pulled defendant over and arrested him and because Officer Belser came into court and testified.

Radcliffe next explained to the court that defendant raised the issue with him again sometime between the preliminary examination and trial. Radcliffe testified he told defendant: "Well, he is saying that he was there. I can't imagine him putting in a police report and testifying on the witness stand that he was there if he was not." Defendant asked Radcliffe to get the work logs during trial, but because it was the middle of trial, Radcliffe could not get the work logs.

During the *Marsden* hearing, the court noted that Radcliffe asked Officer Belser questions during trial about the stop "and who was in the car with him." The court then asked defendant if he and Radcliffe were still able to talk to one another, to which defendant responded "Yeah."

The court denied defendant's request to appoint new counsel for the motion for a new trial. The court found that there was no breakdown in the attorney-client relationship to the extent that a new attorney was required. The court further found that Radcliffe "made a tactical decision with regard to those particular records . . . and that he sufficiently covered the ground that [defendant raised] by asking a number of questions of the detective about his presence at the scene that evening that [defendant was] arrested."

After the *Marsden* hearing, Radcliffe filed a motion for a new trial on behalf of defendant. The court denied the motion, finding there was no ineffective assistance of counsel based on the fact that "[c]ounsel cross-examined vigorously the officers and other witnesses at trial."

Pursuant to *Marsden*, "[a] defendant 'may be entitled to an order substituting appointed counsel if he shows that, in its absence, his Sixth Amendment right to the assistance of counsel would be denied or substantially impaired.' " (*People v. Memro*

(1995) 11 Cal.4th 786, 857.) "*Marsden* motions are subject to the following well-established rules: ' " 'When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance. [Citation.] A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citations].' [Citations.]" ' [Citation.] Denials of *Marsden* motions are reviewed under an abuse of discretion standard." (*People v. Barnett* (1998) 17 Cal.4th 1044, 1085.)

Defendant contends that because his claim "was a matter beyond 'the four corners of the courtroom' " and because his claim Officer Belser was not present when he was arrested mixed with the fact that Radcliffe did not investigate his claim "presented a colorable claim of ineffective assistance of counsel . . . ," the trial court should have appointed new counsel. We disagree.

"A claim of denial of the right to the effective assistance of counsel is not colorable . . . if it is based in substantial part upon factual representations that are manifestly inconceivable . . . ." (*People v. Stewart* (1985) 171 Cal.App.3d 388, 396, disapproved on other grounds in *People v. Smith* (1993) 6 Cal.4th 684, 694 [*dicta*].) Moreover, the Supreme Court has held "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment." (*Strickland v. Washington* (1984) 466 U.S. 668, 691 [80 L.Ed.2d 674, 695].)

Here, under the circumstances of this case, defendant's factual representations appear "manifestly inconceivable." Officer Belser's name appeared on the police report, he appeared in court on two separate occasions to testify about defendant's arrest, and Radcliffe "vigorously" cross-examined him. Based on those facts, it is inconceivable that

10

Officer Belser was not present when defendant was arrested. In light of the fact that Radcliffe was aware that Officer Belser's name was on the police report and the fact that Officer Belser testified, Radcliffe's decision not to investigate defendant's claim was reasonable. Finally, the matter was not entirely outside the four corners of the courtroom because the judge was able to see Officer Belser's testimony and Radcliffe's "vigorous" cross-examination of Officer Belser. Thus, the trial court did not abuse its discretion by refusing to appoint new counsel to prepare defendant's motion for a new trial.

DISPOSITION

The judgment is affirmed.

/s/_____
Robie, J.

We concur:

/s/_____
Nicholson, Acting P. J.

/s/_____
Duarte, J.

11