Filed 2/21/24  P. v. Rodriguez CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>ULISSES RODRIGUEZ,<br><br>          Defendant and Appellant. | A165060<br><br>(Humboldt County<br>Super. Ct. No. CR1804051) |

After a jury found Ulisses Rodriguez guilty of murdering two people and committing other felonies, the trial court sentenced him to prison.  In this appeal, Rodriguez challenges the court's evidentiary rulings concerning John Doe (an eyewitness to some of the charged conduct), argues the court failed to conduct a sufficient inquiry before denying his post-verdict *Marsden*[1] motion, and contends the court's April 4, 2022 order imposing fines and fees violated his right to be present at sentencing.  We agree with Rodriguez's position concerning the fines and fees but reject his other claims.  For those reasons, we remand the matter for a hearing on fines and fees and otherwise affirm the judgment.

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

1

## BACKGROUND

Rodriguez had a business relationship with Lenea Wilkes, who owned land in the China Creek area in Humboldt County. Wilkes allowed Rodriguez to grow marijuana there in exchange for a share of the plants or proceeds when the harvest was ready. Wilkes had a similar arrangement with Jose Sanchez, who grew marijuana on plots neighboring the ones used by Rodriguez. Victims Jeremy K. and Tiffany E. (collectively, victims) lived in their SUV on the lower part of the China Creek property and cared for Rodriguez's marijuana crop in exchange for either a portion of the harvest or part of the profit.

Doe was a prosecution witness and a friend of Sanchez. He testified at the preliminary hearing that in August 2018, he was working on one of the marijuana "grows" on Wilkes's property when Rodriguez told him about a dispute he had with the victims: Rodriguez said that "if they were gonna go and take his bushes, he didn't want to go and see them around there." Further, if Rodriguez were to come back and find them there, "he was gonna hurt them or something bad was going to happen." When Rodriguez returned to the grow, Doe heard about five or six gunshots before Rodriguez approached him, carrying a pistol in his hand. Rodriguez brought Doe to the SUV, where Doe saw two victims lying dead. According to Rodriguez, "it was gonna get bad" for Doe if he didn't help Rodriguez dispose of the bodies.

After the preliminary hearing, Rodriguez moved in limine to introduce evidence of Doe's November 2019 arrest for selling two ounces of methamphetamine and the prosecution made a successful in limine motion seeking to determine the admissibility of that (and other) evidence pursuant to Evidence Code section 402 (undesignated statutory references are to this code). The court ruled that Rodriguez could ask Doe about the arrest but

2

denied the defense's request to call the investigating officers to testify about the details.  At the section 402 hearing, in addition to examining Doe on the arrest, Rodriguez asked about Doe's application for a "U Visa"—a "nonimmigrant status . . . set aside for victims of certain crimes" who "are helpful to law enforcement . . . ."  After concluding that Doe had little familiarity with the U Visa process, the court ruled:  "[A]s to the details or how to do it, I think there would be a lack of foundation for any of that."

Rodriguez went to trial on an information charging two counts of murder (Pen. Code, § 187, subd. (a)), one count of making criminal threats (Pen. Code, § 422), and one count of committing arson (Pen. Code, § 451, subd. (d)).  The information also alleged that that Rodriguez had suffered multiple murder convictions in the same case and personally used a firearm (Pen. Code, § 12022.53, subd. (d)) in making the criminal threat and committing both murders.  The jury found him guilty as charged.

Before the sentencing hearing, Rodriguez made an unsuccessful *Marsden* motion. He was thereafter sentenced to prison.  Three days later, on April 4, 2022, and in Rodriguez's absence, the court imposed fines and fees on him by written order.

## DISCUSSION

### I. Rodriguez Forfeited His Claim of Error in the Trial Court's Rulings Concerning Doe's November 2019 Arrest

Rodriguez first argues the trial court erred in its ruling on a defense motion in limine concerning Doe's arrest for selling methamphetamine.

To place the issue in context, we provide the following additional background information.  After the preliminary hearing, Rodriguez moved in limine to seek:  (1) permission to inquire whether Doe was "currently facing felony prosecution for drug trafficking of methamphetamine"; and

3

(2) inclusion of testimony from two "Drug Task Force Agents" who had "been subpoenaed to testify to the specifics of the investigation" that led to Doe's arrest on those charges in November 2019—more than a year after the events of Rodriguez's case. At the hearing on the motion, the trial court permitted Rodriguez to ask John Doe if he is facing felony prosecution for drug trafficking but denied the motion as to the proffered testimony of the two investigating officers. According to the court, the latter testimony was irrelevant.

"Evidence of circumstances underlying a conviction is admissible to impeach credibility if the proponent demonstrates that the evidence has 'any tendency in reason' to disprove credibility."[2] (*People v. Dalton* (2019) 7 Cal.5th 166, 214.) In the trial court, Rodriguez failed to make any such demonstration. In his written motion in limine, he offered one specific rationale for the proffered evidence's "tendency in reason to . . . disprove the truthfulness of" Doe's testimony: linking Doe to high levels of methamphetamine in the victims' bodies at the time of their death. (§ 780.) According to Rodriguez, this would provide a motive for Doe "to kill the decedents." At the hearing on the motion, defense counsel repeated the same speculative rationale, and no other. And it was for this sole purpose, as advanced by Rodriguez, that the trial court found the details of Doe's arrest irrelevant.

On appeal, Rodriguez argues for the first time that the trial court should have granted the motion on the grounds that the details of Doe's

---

[2] As Rodriguez notes (and the People do not dispute), the same principle may apply to conduct that does not result in a conviction. (See *People v. Wheeler* (1992) 4 Cal.4th 284, 297, fn. 7 [witness may be impeached with conduct involving moral turpitude even though the witness was not convicted].)

arrest have a " 'tendency in reason' to disprove credibility" because they concern a crime of moral turpitude.  (*People v. Dalton*, *supra*, 7 Cal.5th at p. 214.)  But below, only the *prosecutor* referred to moral turpitude while conceding at the hearing that Doe could be questioned about the pending charges—an inquiry the court's ruling permitted.  Rodriguez, on the other hand, never argued (or even mentioned) moral turpitude in his motion or at the hearing.  "A party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct."  (*People v. Partida* (2005) 37 Cal.4th 428, 435.)  We therefore conclude that Rodriguez has forfeited this claim on appeal.

### II. Rodriguez Has Adduced No Error in the Trial Court's Rulings Concerning Evidence of Doe's Application for a U Visa

Next, Rodriguez argues the trial court erred in excluding evidence that "Doe had an application pending for a 'U Visa.' "  We disagree.

At the same hearing in which the trial court ruled on Rodriguez's motion concerning Doe's November 2019 arrest, the court also granted without objection the prosecution's in limine motion for a hearing on the admissibility of any evidence the defense wished to present, excepting Rodriguez's own testimony.  (§ 402.)  Then, at the section 402 hearing, Rodriguez questioned Doe about his application for a U Visa, and after acknowledging that "getting help by law enforcement to stay in this country . . . can be argued that it's bias," the court ruled:  "So as far as that goes, he's applied.  He's established he's applied.  But as to the details or how to do it, I think there would be a lack of foundation for any of that."

On appeal, Rodriguez challenges that ruling, arguing the trial "court's statements here, fairly read, was [*sic*] that there was to be no evidence as [to] the U Visa criteria in the absence of an 'expert' or specialized witness."

"Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.) Here, it is not clear that Rodriguez's purportedly fair reading accurately construes the court's ruling, or that the ruling even excluded the evidence he claims was excluded. For example, nothing in the trial court's ruling prevented Rodriguez from asking Doe whether he applied for a U Visa, so there could not have been any erroneous exclusion of evidence in that respect.

Nor is it clear that the trial court excluded evidence as to the details of the U Visa process, if that evidence came from witnesses other than Doe. Before making its ruling, when the court asked defense counsel whether she was going to call "an expert or someone who can explain to the jury" the U Visa process, counsel averred that she "was likely going to discuss that with other witnesses that investigated," and the trial court replied, "Okay." Then, the court shifted its focus to Doe's apparent lack of understanding as to the U Visa process and made its ruling immediately thereafter. In context, then, the trial court's ruling appears only to have prevented Doe from giving detailed testimony about the U Visa process—Rodriguez might have been allowed to elicit those details from other witnesses. Thus, Rodriguez has failed to affirmatively demonstrate error as to potential testimony from other witnesses because he has failed in the first instance to demonstrate that the court's ruling actually excluded such evidence. (*People v. Sanghera*, *supra*, 139 Cal.App.4th at p. 1573.) For that reason, we reject Rodriguez's claim concerning evidence as to the U Visa criteria or process in general.

Still, even if Rodriguez might have been allowed to question other witnesses about the details of the U Visa process, the trial court did

apparently prevent Rodriguez from eliciting testimony about those details *from Doe*. But an "appellate contention that the erroneous admission or exclusion of evidence violated a constitutional right is not preserved in the absence of an objection on that ground below." (*People v. Daniels* (2009) 176 Cal.App.4th 304, 320, fn. 10.) Here, with respect to potential testimony from Doe regarding details of the U Visa process, Rodriguez's counsel not only failed to object to the exclusion—she also *agreed* with the reasoning underlying it, conceding that Doe did not "understand[] the U Visa process." Consequently, to whatever extent Rodriguez argues the trial court erred in excluding Doe's testimony about that process, we conclude the claim is forfeited.[3]

Since we have reached "only one" claim of error that Rodriguez might have "properly preserved for appeal, we need not address [his] contention that cumulative error at trial requires reversal." (*People v. Richie* (1994) 28 Cal.App.4th 1347, 1364 & fn. 6.) And having concluded that these claims of error are either meritless or forfeited, we do not reach the Attorney General's contention that any such errors were harmless.

---

[3] Thus, in addition to forfeiting his first claim concerning Doe's drug trafficking arrest, Rodriguez has also forfeited any claim respecting the exclusion of Doe's potential testimony about the U Visa process, and he has failed to demonstrate that the trial court actually excluded such U Visa testimony from other witnesses. For those reasons, his case is readily distinguishable from *People v. Castaneda-Prado* (2023) 94 Cal.App.5th 1260, whose application Rodriguez urges in a supplemental brief. In that case, the trial court unambiguously "exclude[d] evidence about U Visas" and the defendant's attorney " 'made a fairly long record' " about the U Visa issue during in limine motions before asking the court to reconsider its ruling prior to the relevant witness's testimony at trial. (*Id*. at pp. 1275–1276.)

### III. The Trial Court Conducted a Sufficient Inquiry Before Denying *Rodriguez's Marsden Motion*

On the day of his sentencing hearing, Rodriguez moved to replace his court-appointed counsel pursuant to *Marsden, supra*, 2 Cal.3d 118. With the prosecutor absent from the courtroom, the court conducted a confidential hearing at which Rodriguez alleged that his counsel had misled him about the likelihood of continuing the sentencing hearing, had insufficient contact with him, failed to "investigate certain things" or file motions she told Rodriguez she would file. Counsel responded that she elected not to file a motion for new trial because her investigations into jury misconduct had not borne fruit and she believed that other issues were better raised on appeal; she also acknowledged that she had "anticipated" that the sentencing hearing would be continued because she thought the probation officer's report might be delayed. After allowing Rodriguez to respond to counsel's remarks, the court denied the *Marsden* motion.

Rodriguez now argues the court erred in failing to conduct an adequate inquiry in response to that motion. We disagree.

"*Marsden* motions are subject to the following well-established rules. ' " 'When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance. [Citation.] A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.' " ' " (*People v. Barnett* (1998) 17 Cal.4th 1044, 1085.)

8

On appeal, Rodriguez identifies six purported shortcomings in the court's *Marsden* inquiry but fails to adduce error in any of those respects.

Rodriguez's first three complaints concern the court's alleged failure to develop a record that would specify what Rodriguez meant when he used three vague phrases: "a bunch of motions," "a lot of things in trial," and "to investigate certain things."[4] But as the Attorney General persuasively argues, Rodriguez cites "no authority for the proposition that the court is required to go beyond the explanation actually offered by a defendant." Rodriguez's citations to two cases, including *People v. Ivans* (1992) 2 Cal.App.4th 1654, do nothing to refute this contention. In *Ivans*, when the defendant stated only " '*some of the grounds*' " on which he sought replacement of counsel, the "court was required to inquire into" the unstated grounds as well. (*Id.* at pp. 1665–1666 & fn. 8.) But here, Rodriguez did not imply that there were any unstated grounds, he simply failed to articulate his *stated* grounds in sufficient detail, despite being given multiple opportunities to do so. And although *Marsden* "has been interpreted as requiring a court not only to listen to a defendant's volunteered reasons. . . , but also to make an active inquiry into those reasons," the court here conducted that active inquiry by asking defense counsel to address Rodriguez's allegations and then asking Rodriguez to respond in turn. (See *People v. Stewart* (1985) 171 Cal.App.3d 388, 398.)

---

[4] As the sentencing hearing commenced, defense counsel allowed Rodriguez to speak directly to the judge to request a continuance of the sentencing hearing for himself. In the colloquy that followed, and to explain why he wanted "more time," Rodriguez explained that he understood that "me and her were going to sit down and talk about filing motions—one of them being a motion for new trial." The court gave Rodriguez and his counsel time to speak. The *Marsden* hearing occurred after the court took a recess.

Nor did the trial court fail to inquire sufficiently into the "assurance" counsel allegedly gave Rodriguez as to continuing the sentencing hearing, as Rodriguez's fourth complaint suggests.[5]  According to Rodriguez, counsel told him that "she was going to push off sentencing for a couple months to give her more time to do what she needed to do."  When the court asked counsel to respond to that allegation, she said:  "I did tell him that I anticipated that this date would get pushed out because I believe I did not have the" probation officer's pre-sentence report.  Rodriguez contends that the court should have explored the "major difference between what counsel was saying about what she had 'anticipated' and what . . . Rodriguez had said about an 'assurance.' "  But to "the extent there was a credibility question between defendant and counsel at the hearing, the court was 'entitled to accept counsel's explanation.' "  (*People v. Smith* (1993) 6 Cal.4th 684, 696.)

Similarly, there was no error in what Rodriguez describes as the trial court's "position that its focus at this hearing was prospective only . . . ."  The "nature" of such a hearing *is* "prospective"—focused on whether "a proper showing has been made that counsel can *no longer* provide effective representation . . . ."  (*People v. Dennis* (1986) 177 Cal.App.3d 863, 871, italics added.)  And contrary to Rodriguez's last objection, the existence of an irremediable "conflict" is not a discrete ground, distinct from ineffective representation, for granting a *Marsden* motion; it is simply one way of

---

[5] In his briefs, Rodriguez refers repeatedly to such an "assurance"—in quotation marks—but that word does not appear in the sealed transcript of the *Marsden* hearing.  To the contrary, Rodriguez's statements at the hearing acknowledge that his trial counsel told him she would *ask* the court to postpone the sentencing hearing for two more months.  "[The attorney] told me not to worry, that there were still a bunch of things to be done and to not worry about this court date because she was going to be able to push it off, *or she was going to ask to get it pushed off for two months*.  And I believed her . . . and it didn't happen like that."  (Italics added.)

making the requisite showing " ' " 'that ineffective representation is likely to result.' " ' " (*People v. Barnett, supra,* 17 Cal.4th at p. 1085.)

In sum, the trial court's *Marsden* inquiry was sufficient.

### IV. *Rodriguez Is Entitled to a Limited Remand on the Issue of Fines and Fees*

Rodriguez argues the trial court erred in imposing fines and fees—including a $10,000 restitution fine—in a minute order amended three days after a sentencing hearing that did not address those matters.  We agree.

Penal Code section 977, subdivision (b)(1), provides in relevant part: "[I]n all cases in which a felony is charged, the accused shall be physically present . . . at the time of the imposition of sentence."  "A criminal defendant has a 'constitutional and statutory right to be present at [a] sentence modification hearing and imposition of sentence.' " (*People v. Nieves* (2021) 11 Cal.5th 404, 508.)  Restitution fines are " 'a significant aspect of a criminal sentence.' [Citations.]  And [our Supreme Court has] confirmed defendant's right to be present when the trial court imposes restitution." (*Ibid.*)

This is not what occurred in this case. Here, the trial court imposed a $10,000 restitution fine, as well as other fines and fees, outside of Rodriguez's presence and in violation of his "constitutional and statutory right . . . ." (*People v. Nieves, supra,* 11 Cal.5th at p. 508.)  As Rodriguez notes, the court's order thus deprived him of the opportunity to "interpose 'ability to pay' or other objections." (See *People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1164–71.)

We reject the Attorney General's contention that this deprivation was harmless beyond a reasonable doubt as in *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035.  *Jones* is inapposite:  Jones was present for the imposition of $370 in fines and fees but was unable to take advantage of the

ruling in *People v. Dueñas*, *supra*, 30 Cal.App.5th at p. 1071 (requiring an ability-to-pay determination before the imposition of fines) because that case had not yet been decided.  (*People v. Jones*, *supra*, 36 Cal.App.5th at p. 1030.) Here, various fines and fees were added to a minute order after the sentencing hearing, depriving Rodriguez of the opportunity to object under *Dueñas* or on any other ground.  The record reflecting the imposition of more than $10,000 in fines and fees in violation of his right to be present reveals no reason to find that error harmless.

Accordingly, we remand the matter to the trial court for a hearing on the imposition of fines and fees, at which Rodriguez may exercise his right to be present.  (See *People v. Castellano* (2019) 33 Cal.App.5th 485, 491.)

## DISPOSITION

The portion of the trial court's April 4, 2022, order imposing fines and fees is reversed, and the matter is remanded for a hearing limited to those fines and fees, subject to the requirements of Penal Code section 977, subdivision (b)(1).  In all other respects, the judgment is affirmed.

SMILEY, J.*

We concur:

STREETER, ACTING P. J.

GOLDMAN, J.

*People v. Rodriguez* (A165060)

---

* Judge of the Superior Court of California, County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13